## RYAN *v.* FOWLER.

A master is responsible to his servant for injuries received by the latter from defects in the building in which the services are rendered, which the master knew, or ought to have known.

*Held,* accordingly, that a girl injured by the fall of a privy attached in an insecure and dangerous manner to the factory in which she was employed, may recover damages from the employer.

The case of *Seymour* v. *Maddox* (71 Eng. L. and Eq., 326), questioned.

APPEAL from the Supreme Court. Action for injuries received from the negligence of the defendant. Upon the trial it appeared that the plaintiff was a girl of fourteen years, employed by the defendant in his mill for knitting shirts, &c. In the wheel-house of the mill, and partly over the water-wheel, was the only privy provided for the use of the female operatives. It was secured by iron spikes or hooks to the east wall of the wheel-house, and was supported by an upright

Ryan *v.* Fowler.

wooden scantling, the lower end of which rested on a breast beam in front of the water-wheel. The privy had been in use eight years: the timber composing it, and the lower end of the scantling supporting it, had become somewhat rotten. Six or eight months previous to the injury to the plaintiff, the pinion-wheel, by which motion was communicated to the machinery, and the water-wheel, had worked apart so that their cogs would not mash properly together. The defendant directed his millwright to put the wheels into closer gear. He attempted to do this in what he testified was the usual and proper manner, but finding some difficulty in doing so, he reported the fact to the defendant, who directed him to do it in another manner. There was evidence tending to show that the effect of making the repairs in the manner directed by the defendant was to make the action of the wheel irregular; to throw a pressure from it upon the east wall; to cause that wall to shake, and to weaken the supports of the privy. The day before the injury of the plaintiff, several of her fellow-operatives observed an unusual vibration in the wall, which was felt in the privy. The plaintiff had occasion to step into the privy, when the structure fell, precipitating her upon the water-wheel, which was in motion, and breaking both her legs. The plaintiff had a verdict of $1,750. The questions made upon the trial sufficiently appear from the following opinion. The court, at general term in the fourth district, reversed the judgment which had been entered upon the verdict, and granted a new trial; whereupon the plaintiff appealed to this court.

*John K. Porter*, for the appellant.

*William A. Beach*, for the respondent.

SMITH, J. The rule governing the liability of the master for injuries sustained by his servant in his employment, and resulting from his negligence, was stated by the learned judge at the Circuit quite favorably to the defendants.

The judge, upon the request of the defendants' counsel, and in the language suggested by him, at the close of his charge, stated to the jury that the plaintiff "was not entitled to recover unless the jury were satisfied that the defendant knew of the defect or imperfection in the mill in its machinery or appurtenances which produced the injury." The case was thus submitted to them upon the theory that the defendant, Fowler, as proprietor of the factory, was responsible to the plaintiff for the injuries sustained by her only upon the ground that the same resulted from his personal negligence or misfeasance. Certainly no exception can be sustained to this charge on the part of the defendant.

But the court below granted a new trial upon the ground that the defendant's motion for a nonsuit should have been granted, and that the case should not have been submitted to the jury.

The defendant's counsel moved for a nonsuit at the close of the plaintiff's case, and also at the close of the evidence which motions were respectively denied and the defendant's counsel duly excepted. If either application for a nonsuit should have been granted, the error is not cured by the verdict, and a new trial was properly granted. When the plaintiff rested she had proved the essential facts relating to the injuries and facts tending to charge the defendant, Fowler, with *actual knowledge of the irregular action of the water-wheel*, the effect of the pressure of the wheel upon the east wall, and the probable consequence of the weakening and vibration of the said wall upon the safety of the privy. It was proved that he went at one time into the wheel-pit and personally directed the work there; that he told the millwright to take a bar and pry up the pillar-blocks into gear, and to make some pegs and wedges and put in behind the blocks, between the blocks and the wall. The proof shows that he was personally cognizant of the acts of the millwright, which probably caused the privy to fall. The witness says: "I told Mr. Fowler it was a hard job to force up the block in that way. He said he thought it would do. The wheel was put

in gear by these wedges driving up the pinion-block." · The mode in which the wheel was thus put into gear and made to revolve was clearly improper. Its action was rendered irregular, causing the weakening and shaking of the east wall of the wheel-pit, and the loosening of the foundation and structure of the privy. If this were the consequence of acts directed by, and known to, the defendant—of which the jury were the proper judges—certainly he was responsible for the injuries resulting from such acts upon the ground of his personal negligence or misfeasance. Not that he knew that these acts would, in fact, necessarily render the privy insecure, or would weaken or impair its foundation, but that such might be the consequence. He is chargeable with knowledge of the probable consequence of the acts he directed, or of which he was cognizant.

In this view of the evidence, I do not think the circuit judge would have been warranted in nonsuiting the plaintiff, either at the close of the plaintiff's case or of the defendant's evidence. The case belonged to the jury upon the evidence, tending to charge the defendant with actual, positive misfeasance — of doing or directing negligent acts — careless of, or inconsiderate in respect to, the consequences liable to result therefrom. It is quite clear and well established, that the principal is responsible for injuries resulting to his employees from his personal negligence or misfeasance. (*Keegan* v. *W. R. R. Co.*, 4 Seld., 175, 181; *Ormond* v. *Holland*, 96 Eng. Com. Law, 100; *Patterson* v. *Wallace*, 1 McQueen Scotch Appeal Cases, 748; *S. C.*, 28 Eng. Law and Eq., 48, 51; *Brydon* v. *Stewart*, 2 McQueen Scotch Appeal Cases, 30; *Marshall* v. *Stewart*, 33 Eng. Law and Eq., 1.)

It is difficult to conceive upon what ground it can be questioned, that a master is responsible to his servant for injuries resulting from his personal negligence, as much as in other relations of men. I cannot concede or imagine that any person is privileged to do injury to others by his personal negligence or misfeasance. All men alike are liable to respond in damages for such injuries; and the relation of master and servant constitutes no exception to the rule.

The relation of master and servant involves reciprocal duties and responsibilities. It is the duty of the master, as is well stated by the court in *Noyes* v. *Smith* (28 Vermont, 59, 64), "to exercise care and prudence, that those in his employment be not exposed to unreasonable risks and dangers; and the servant has a right to understand that the master will exercise that diligence in protecting him from injury, and also in selecting the agent from which it may arise." In *Ormond* v. *Holland* (*supra*), it was held, that the master would be liable to his servant when the injury resulted from his personal interference with the work of the agent; or in the hiring and retaining of incompetent servants; or in choosing or using of improper implements. In *Patterson* v. *Wallace* (28 Eng. Com. Law, 50; *supra*), Lord Chancellor CRANWORTH, delivering the opinion of the court in the House of Lords, said: "When a master employs a servant in a work of a dangerous character, he is bound to take all reasonable precautions for the safety of the workman. It is the master's duty to be careful that his servant is not induced to work under a notion that tackle or machinery is staunch and secure, when in fact the master knows, or *ought to know*, that it is not so."

Within the principle asserted in these cases, the defendant, Fowler, owed it as a duty to the operatives of his factory to provide and keep a safe and secure privy for their resort; or that the privy provided for their use should be safe and secure.

The location of the privy in a dangerous place made it more imperatively his duty to see to it that its foundations were made and kept sound and safe beyond contingency. He had no right to expose the female operatives of his factory to risk and danger in such a place. It was his duty to know that the privy was safe, and that the operatives for whom it was designed and provided might resort to it without personal risk or peril to life or limb.

The injury which the plaintiff suffered was not the result of any accident incident to her employment. The servant doubtless assumes all the risks which pertain to the business in which he is engaged. The learned judge at the Circuit

correctly charged on this point, that "a person entering the service or employment of another runs all the ordinary risk pertaining to the particular service or employment."

The plaintiff was not called upon to inquire in respect to the safety of the building in question. She could not be expected to know how it was supported, or whether it was or was not safely constructed. It was provided for her use. It was the master's duty to see that it was safe and secure, and not hers to watch and guard by any particular vigilance against accidents of the kind which caused her injury.

We are cited, in opposition to this view, to the case of *Seymour* v. *Maddox* (71 Eng. C. L., 326). In this case the plaintiff was hired to sing on the stage at the defendant's theatre. In passing from her dressing-room to the stage, she fell through an unguarded and unlighted hole in the floor of the theatre and was injured. It was held that the action would not lie, and that the risk was one assumed in her employment. I cannot think that this case was properly decided, or can be sustained upon any sound principle. The learned judges who gave the opinion of the Court of Common Pleas treat the engagement of the plaintiff as an employment on the premises in their actual condition. Judge ERLE says: "A person makes his own choice whether he will accept employment on premises in this condition; and, if he do accept such employment, he must also make his own choice whether he will pass along the floor in the dark or carry a light." This girl simply contracted to sing in the theatre. She might reasonably expect and assume that the floors of the building were safe, and might be securely passed over. She could not be held, I think, bound to be on her watch or lookout for pit-holes in the floor, and was not called upon, in the course or by the nature of her employment, to guard against accidents from such a cause. I think it was a plain duty which the defendant owed to the plaintiff in that case to provide safe floors in his theatre, over which she might securely pass in the performance of her engagement, and that his omission to do so was gross negligence. But, if this case were good law, I do not think it

conclusive of the present case. The plaintiff in that case passed through a dark passage in the night without a light. This was her own act, and may have been negligence on her part; and the defendant did not require such omission of care on her part, or impose the risk by any necessity in the ordinary course of duty required of the plaintiff. The fundamental error in this case, I think, consists in its not distinguishing between that class of accidents or injuries incident to the work of the agent and those which arise from extrinsic causes. When a person is employed to do a dangerous job of work or a service of any kind, he assumes all the perils which belong to the work itself; and he must be held to take all the risks which grow out of, or are in any way connected with, or pertain to, the performance of the duties he has assumed to discharge. Against such risks and accidents he may, and he must, take proper precautions for himself, at his peril, and is his own insurer. But this rule does not, and should not, apply to accidents or injuries resulting from extrinsic causes and circumstances which cannot be foreseen by him, and which, by the exercise of ordinary care and caution, he could not anticipate or prevent.

This distinction is well illustrated by the case of *Marshall* v. *Stewart* (*supra*). In this case the action was brought by the widow and children of a miner killed in the employment of the defendant, from the falling of a stone from the top of the shaft of the mine as he was coming out — the planking then being in an unsafe state. Lord Chancellor CRANWORTH, in delivering the opinion of the House of Lords, said "it was unquestionably the duty of the master — *quo* master — in his capacity of master, to take him up safely, just the same as to have brought him down safely;" and that the injury happened to this man from the neglect of the master while he was sustaining the character of master to him. The injury here, and in the case of *Seymour* v. *Maddox*, as with the case now before this court, arose from causes extrinsic to the work in which the servant was engaged. It was not the duty of the servant to guard, in the case of *Marshall* v. *Stewart*, against

the unsafe planking of the entrance to the mine, or against holes in the floor, in *Seymour* v. *Maddox*, or, in this case, against the insecurity of the privy. The proprietor of the mine, of the theatre, and of the factory, in these cases, provided the place in which the servant was to be employed, and were respectively bound to take proper care not to subject them to unreasonable risks and dangers from causes beyond their control. (28 Vt., 63 ; Hilliard on Torts, 563 ; 5 Exch., 352 ; *Perry* v. *Marsh*, 25 Ala., 659.)

The motions for nonsuit were properly denied, and the judgment of the general term should be reversed, and that of the special term affirmed.

All the judges concurring,

Judgment accordingly.