## LUCY A. WARNER, adm'x, &c. *vs.* THE ERIE RAILWAY COMPANY.

Railroad companies, as common carriers of passengers, must be held to guaranty the soundness and safety of their vehicles, their bridges, roadway and machinery.

But this rule does not apply in the case of servants of a railroad company; there being no such guaranty as between master and servant.

The remedy of a servant, against a master, for injuries maintained in the service of the latter, rests entirely upon the ground of misfeasance or negligence.

For injuries sustained by a servant, in his master's employment, an action lies in these cases : 1st. Where the injury was caused directly by the personal fault, negligence or misfeasance of the master.   2d. Where the injury resulted from the careless hiring or retaining of incompetent or unskillful servants in superior positions.   3d. Where the master does not take proper precautions for the safety of his servants, but subjects them to injury by the use of unsafe machinery, or exposes them to unreasonable risks and dangers.

An action for damages, under the statutes of 1847 and 1849, by the personal representative of a deceased person whose death was caused by the wrongful act or default of the defendant, is sustainable, if at all, on the same principle as if the deceased had survived the injury and was himself the plaintiff upon the record.

In an action by the personal representative of a person who was killed while in the employ of the defendants, upon their railway, as a baggage master on a train of cars, by the breaking down of a bridge, to recover a compensation for the injury, when the plaintiff rested, on the trial, she had proved that the bridge fell from decay ; that one of the chords was badly rotted, and a great many pieces of the bridge were decayed, more or less ; that four or five posts were rotted at the tenons clear through ; that the bridge had been built more than ten years, of timber but partially seasoned, and then painted, thus causing dry rot ; and by the testimony of several experienced bridge builders, that such a bridge could not reasonably be expected to stand over from five to eight years.   *Held* that upon this undisputed testimony the judge properly refused to order a nonsuit ; and that he would not have been warranted in taking the case from the jury.

Although the law does not require that the directors of a railroad corporation as individuals shall possess particular professional or mechanical knowledge or skill in engineering, bridge building, or railroad construction or repairs, or that they possess more knowledge or skill in respect to such matters than men ordinarily do, yet it does require that they, as a board representing the corporation, exercise ordinary care and diligence in providing for the construction, care and maintenance of the road, and for the safety of the employees of the company, so that they be not subjected to unnecessary and unreasonable risk and danger.

Warner *v.* Erie Railway Company.

To charge a railroad company with negligence, it is not necessary to show that the directors knew, or had notice of defects in their machinery, or in the construction of the railroad, or in its bridges or otherwise. It is their duty, acting for the corporation, to anticipate decay and failure in their works and structure and machinery, and to provide against such decay and failure in season to prevent injury or damage; and a clear omission to do so, on their part, is negligence, and negligence of the corporation.

The appointment of competent and skillful agents is simply the discharge of a single duty, and will save the corporation from liability for negligence on that ground. But if skillful and competent agents neglect their duty to the injury of the servants of the corporation, or others, the corporation is not absolved. Such neglect is still the neglect of the corporation.

The exemption of a principal from liability to a servant for an injury inflicted by the negligence or want of care of a fellow servant, extends to all cases where the servants are strictly *fellow-servants* in the same department of service, and are not subject to the order or control of each other.

All subordinates who are under the control of a superior, are entitled to hold such superior as representing the master, and the master as responsible for his incompetency or misconduct.

Thus where a railroad corporation, through its board of directors and its other agents acting under their authority, is guilty of negligence in not taking the proper care and precaution to see to it and know that a bridge is safe and secure, and a baggage master in its employ is killed by the breaking down of such bridge in consequence of decay, the corporation is liable in an action for damages, brought by the personal representative of the deceased.

THIS is an action to recover damages, arising from a personal injury, which resulted in the death of Andrew J. Warner, the plaintiff's intestate, one of the defendants' employees. The deceased was a baggageman, and, when killed, was in the discharge of his duty, as such, on a train of cars going from Hornellsville east, on the defendants' railroad. One of the defendants' bridges, over the Conhocton river, fell as the train of cars was passing over it. The jury found the bridge fell from decay in its timbers. The bridge was claimed by the defendants to have been properly constructed, and was originally of sufficient strength for the purposes for which it was intended. The court, on the trial, held that there was not any thing, in that respect, to submit to the jury.

The court held that there was only one question in the case to be submitted to the jury, and that was, whether the

board of directors themselves, as representing the defendants, and as distinguished from the employees, were guilty of negligence in not discovering the fact that the bridge was in an unsafe condition. That if the jury should be satisfied, from the evidence, that the bridge was unsafe from decay, and that occasioned its fall, and the board of directors were guilty of negligence in not discovering the fact that the bridge had thus become unsafe, then the plaintiff would be entitled to recover, and that that question alone must go the jury.

The counsel for the defendants moved for a nonsuit, and insisted that there was nothing showing any negligence on the part of the board of directors. The court decided the case must go to the jury on the question stated. The defendants' counsel excepted.

The defendants' counsel also moved for a nonsuit, at the close of the plaintiff's case, on two grounds,

1st. That there was not any evidence tending to show that the injury arose from negligence on the part of the defendants.

2d. That the complaint alleged that before the bridge fell, the defendants had notice it was unsafe and insecure; that there was not any evidence in the case tending to show any knowledge, on the part of the defendants, or notice to them, that the bridge was unsafe, or insecure; that such knowledge or notice, was, in this case, necessary to entitle the plaintiff to recover.

The court refused to nonsuit the plaintiff, and the defendants' counsel excepted.

In submitting the case to the jury, the court instructed them, among other things, "that, in order to charge the defendants, it is necessary to show that the decay in the bridge, if it fell from decay, was known to some of the defendants' employees, and an omission, on their part, thereafter, to remedy the defect."

Thereupon the counsel for the defendants requested the court to take the case from the jury, as there was no evidence tending to show any such knowledge, or omission. The court

refused to take the case from the jury, and the defendants' counsel excepted.

The defendants' counsel asked the court to instruct the jury that, in order to charge the defendants, it was necessary to show that the decay in the bridge, if it fell from decay, was known by some notice, or otherwise, to the president and directors. The court refused to so instruct the jury without qualification. The defendants' counsel excepted to this refusal. The court, however, did instruct the jury, as last above requested, with the qualification and addition, "that if the board of directors, by the exercise of that skill and prudence which is to be expected of persons occupying the same position, should, by the exercise of reasonable diligence and skill, have ascertained or known, the defect in this bridge, the failure to ascertain, on their part, would make the defendants liable, because it is negligence, and substantially the same as if notice had been given the board."

The defendants' counsel excepted to this part of the charge given by way of qualification and addition.

The jury rendered a verdict against the defendants for $5000. A motion was made for a new trial, on a case containing exceptions. The court denied the motion. This appeal is from the order denying such motion.

*John Ganson,* for the appellants. I. The court erred in refusing to nonsuit the plaintiff. There was not any evidence tending to show that the bridge was not originally sufficient, nor that the employees, who were intrusted with the supervision, examination and repairing of the bridge were incompetent. This was, in effect, conceded on the trial, and the court so determined. The common employer is not responsible to one servant for the negligence of a fellow-servant. The court on the trial so held in this case. (*Tanant* v. *Webb,* 86 *Eng. Com. Law Rep.* 96. *Albro* v. *Agawam Canal Co.,* 6 *Cush.* 75, 77. *Priestly* v. *Fowler,* 3 *Meeson & Wels.* 1.

*Hutchinson* v. *The York N. and B. R. Co.*, 5 *Exch. R.* 343. *Wigmore* v. *Jay, Id.* 354. *King* v. *The Boston and Worcester R. R. Co.*, 9 *Cush.* 112. *Seaver* v. *Boston and Maine R. R. Co.*, 14 *Gray*, 466. *Coon* v. *Syracuse and Utica R. R. Co.*, 1 *Seld.* 492. *Hayden* v. *Smithville Manufacturing Co.*, 29 *Conn. R.* 548. *Wright* v. *New York Central R. R. Co.*, 25 *N. Y. Rep.* 562, 566.) The court, on the trial, also decided that the defendants were not liable unless the jury should, from the evidence, become satisfied that the board of directors themselves, as representing the defendants, and as distinguished from the employees, were guilty of negligence in not discovering the fact that this bridge was in an unsafe condition.

II. There was nothing in the evidence upon which a finding of negligence, on the part of the board of directors, could be predicated. The board of directors had originally constructed a bridge sufficient for the purpose for which it was intended. It had served that purpose for nine years and eight months. The board of directors had employed competent mechanics to supervise, examine, repair and reconstruct the bridge whenever it was necessary. These competent persons frequently examined the bridge, and made a thorough examination the day before it fell. They did not then discover, and had at no time before discovered, any defect in the bridge. They had never reported it as defective; they did not know, they had never heard, or suspected, even, that it had become defective.

III. The court, in effect, decided that the law requires something more of the board of directors than to furnish a sufficient bridge, and to employ competent and skillful men to examine, repair and reconstruct it when necessary. That, notwithstanding the defendants' board of directors had originally furnished a sufficient bridge, and had employed competent and skillful mechanics to take charge of it, and examine, repair and reconstruct it, when necessary, they had not discharged their full duty, in this respect, to their employees.

Although the board of directors had, in these respects, done all that could be required of them, still another duty rested on them ; and that was *they* should, as a board of directors, by the exercise of reasonable *personal* diligence and skill, have ascertained, *themselves,* whether the bridge had become defective.   The failure, on *their* part, to ascertain the defect, if it might have been ascertained by that skill and prudence, which is to be expected of persons occupying the same position, was such negligence as rendered the defendants liable. This instruction to the jury, when taken in connection with what it was conceded the defendants' board of directors had done, in effect states the law to be that a board of directors must be composed of persons having more skill than the mechanics they employ.   That the employment of suitable and skillful mechanics to attend to matters, requiring the exercise of mechanical skill, does not relieve a corporation from obligation to answer its employees for the damages which they may sustain from the negligence of their fellows.

IV.   The court instructed the jury "that, in order to charge the defendants, it is necessary to show that the decay in the bridge, if it fell from decay, was known to some of the defendants' employees, and an omission on their part thereafter to remedy the defect."   There was not any evidence tending to show such knowledge, and the court should have taken the case from the jury, when requested to do so by the defendants' counsel.   This was the law of the case, and, on this motion, must be so regarded.   Where, on the trial of a cause, the jury are instructed, in respect to the rule of law which they are to apply, as requested by the defendants, and a verdict passes against them, and they move for a new trial on the ground that the verdict is contrary to the evidence, the defendants have a right, on such motion, for all the purposes of the motion itself, to insist that such instruction is correct.   (*Bunten* v. *The Orient Mutual Insur. Company,* 4 *Bosw.* 254.)

V.   The court erred in charging the jury, under the facts

in this case, that there was a duty resting on the defendants, so far as its employees are concerned, beyond furnishing a sufficient bridge and employing competent mechanics to examine it, and providing ample means for repairing, and "reconstructing" it. After the defendants had furnished such a bridge, employed such mechanics and provided such means, nothing short of notice to the board of directors, or at least to some of its employees, that the bridge had become defective, and an omission, thereafter, to remedy the defect, could render the defendants guilty of negligence, so as to make them liable to one of its employees. The master does not guaranty to his employees that the instruments furnished them to perform their work, shall continue to be sufficient, and that if they, from use, become defective without his knowledge, he will be liable to them for any damage they may thereby sustain. Knowledge or notice of the defect, in such case, is a necessary element to make out negligence. (*Kenyon* v. *The Western R. R. Co.*, 4 *Seld.* 175. *Price on American Railroad Law*, 294. *King* v. *The Boston and Worcester R. R. Co.*, 9 *Cush.* 112. *McMillan* v. *The Saratoga and Washington R. R. Co.*, 20 *Barb.* 449. *Langlois* v. *The Buffalo and Rochester R. R. Co.*, 19 *id.* 364. *Priestley* v. *Fowler*, 3 *Mees. & Wels.* 1.)

*Sherman S. Rogers*, for the respondent. I. It was conceded at the trial, and the court correctly charged, that negligence by the board of directors was the negligence of the master, and not of the employees.

II. That there was evidence of negligence by the employees, or the master, or both, cannot be disputed. That negligence consisted in allowing the bridge to stand, when, from its age and construction, and tendency to decay, it was probably unsound, and in not making an adequate examination of it to test its soundness; an examination which, if made, would have shown it to be unsafe.

III. Negligence is the failure to discharge a duty. In

order then to determine whether the directors of the defendants have been guilty of negligence, it is necessary to determine what was their duty. In the outset of the inquiry it is proper to reiterate the statement that the *directors stand in the place of the master.* They are, for all the purposes of the question under discussion, the corporation itself in bodily form. Upon them, therefore, are imposed all the duties which the master owes to his servant. The case is not otherwise, in this behalf, than it would be were the defendants a copartnership firm, composed of the individuals who in point of fact constituted its board of directors. This must be so ; otherwise as a corporation can act only through agents, officers and servants, the servant has no responsible master to whom he can look for the discharge of those duties which he has a right to require from his master, in the furnishing of competent fellow servants and suitable appliances for his work. What then were the duties of the board of directors in this case ? The defendants claim that having provided a bridge which was originally sufficient, the master's duty was discharged by appointing a suitable person master of its bridges, and furnishing competent subordinates. That the directors had a right to rely upon those employees for a proper discharge of their duties. That it was a part of their duty to ascertain when the bridge became unsafe, and if they failed to do so, the negligence was that of the co-employees of the intestate, and not that of the board of directors. We reply, first, in the language of the second point made by the respondent in the argument of the former appeal in this case, to which the court is respectfully referred ; and, second, that the duty of the master is not fully performed when he has furnished a suitable bridge and provided competent servants to take charge of it. He cannot withdraw from all supervision of his business and entrust it wholly to servants, for this would be practically to deprive the servant of a responsible master to whom he might look for the performance of the

implied obligations existing. from the master to the servant in relation to providing suitable fellow servants, etc.

It is, therefore, the master's duty to use a reasonable supervision of his business. It is his duty to use such diligence in requiring his servants to perform their duties. Competent servants may be careless. Careful servants may at times be negligent. A bridge which was originally sufficient may become unsafe, and the master, as a person of ordinary intelligence, may have reason to believe that it has become unsafe, and he cannot without fault upon his own part, neglect to cause such an examination to be made as will at the same time determine that question, and also the question whether his servants, to whose care he has entrusted it, have not been negligent in the examination made by them. To illustrate by the case at bar, changing it in a single feature only for the purpose of more forcibly presenting the argument ; the change, however, in no way affecting the principle involved.

Suppose, then, this bridge had stood *for twenty-five years,* so that by the concurrent testimony of all the witnesses it had out-lasted its probable life by many years. The directors knew when it was built. They knew. how and where it was built. There is nothing so recondite in the subject, as that, being reasonably intelligent men, they may not be presumed also to know, from the nature of the case, that the bridge has probably become unsafe and that it ought to be rebuilt. Have they then done their duty ? Can they say : "It is true, that we knew all these things, but we cannot be expected to give our personal supervision to such matter. We hired a competent and careful master of bridges, and gave him suitable subordinates. We relied upon them." This would not do. The obvious reply would be : "Conceding that the employees, who had the bridge in charge, were competent men, you had notice, from the very nature of the case, not only that the bridge was probably unsafe, but that those employees, in all probability, had not done their duty. There

Warner *v.* Erie Railway Company.

was negligence on your part, therefore, in that you did not ascertain the fact in this behalf." The case is the same in principle, as if some person had gone to the board of directors and informed them that he had examined the bridge, and discovered it to be dry rotted in its essential parts, and they had disregarded the notice.

In the case at bar, the directors had circumstantial evidence, so to speak, of the probable unsoundness of the bridge. In the one supposed, they have direct testimony as to the fact. If, in the one case, they might skulk behind their servants, saying, "we employed competent men, and we relied upon them to do their duty," so may they in the other.

It follows that the instruction of the court was correct, for having notice of the probable unsoundness of the bridge, and that the defendants' servants had probably not done their duty, the directors took no measures to ascertain the facts in this behalf. If they had done so, the jury were well warranted by the evidence, in finding that the unsoundness of the bridge would have been detected.

IV. The verdict was not against the weight of evidence. On the contrary, the evidence well sustained the verdict.

The entire evidence, on this subject, forces upon the mind the conclusion, that the defendants were running their trains over this, and similar bridges, beyond the time when it was probably safe to do so ; thereby hazarding the lives of their employees and passengers, upon the chance that *perhaps* the old structures would carry their burthens safely.

V. The charge of the court, in response to the requests of the defendants' counsel, was in all respects correct, except as to the third and fifth requests, and the error in the charge upon those requests, was against the plaintiff; of this the defendants cannot complain.

E. DARWIN SMITH, J. The plaintiff's husband was killed while in the employ of the defendants in the capacity of a baggage master upon a train of cars running upon the de-

fendants' railroad, by the breaking down of a bridge upon the line of said railroad. The proofs clearly show, and it is indisputable, that said bridge fell in consequence of the decay of some of its timbers by what is called the dry rot, not ordinarily discoverable upon the surface of the timber.

The question presented in this case is whether the defendants are liable to the plaintiff, under the statutes of 1847 and 1849, of this state, giving the representatives of a deceased person, whose death has been caused by the wrongful act or default of any persons or corporations, an action for the recovery of a compensation for the injuries resulting from such death. If the intestate had been a passenger in the cars which fell through the bridge in question, no doubt would have existed as to the defendants' liability, for the defendants, as common carriers, in such case, must be held to guaranty the soundness and safety of their vehicles, their bridges, roadway and machinery. (*Alden* v. *New York Central Railroad Co.,* 26 *N. Y. Rep.* 102, *and* 24 *id.* 201.) But the plaintiff's husband being a servant of the defendants, this rule does not apply in this case, as there is no such guaranty as between master and servant. The remedy of a servant against a master, for injuries sustained in his service— and this action is sustainable, if at all, on the same principle as if the plaintiff's husband had survived the injury and was himself the plaintiff upon the record—rests entirely upon the ground of misfeasance or negligence. For injuries sustained by the servant in his master's employment an action lies in three cases: 1st. Where the injury was caused directly by the personal fault, negligence or misfeasance of the master. (*Ryan* v. *Fowler*, 24 *N. Y. Rep.* 413, *and the cases there cited.*) 2d. When the injury resulted from the careless hiring or retaining of incompetent or unskillful servants in superior positions. (*Ormond* v. *Holand*, 96 *Eng. Com. Law*, 100. 1 *Redfield on Railways*, 520, §§ 131 *and* 138. *Frazier* v. *Pennsylvania Railroad Co.*, 38 *Penn. R.* 104. *Snow* v. *Housatonic Railroad Co.*, 8 *Allen*, 441.) 3d. Where the

master does not take proper precautions for the safety of his servants, but subjects them to injury by the use of unsafe machinery, or exposes them to unreasonable risks and dangers. (*Noryed* v. *Smith,* 28 *Verm. R.* 59. *Patterson* v. *Wallace,* 28 *Eng. Law and Eq.* 48–51. 1 *Redf.* 522. *Marshall* v. *Stewart,* 33 *Eng. Law and Eq.* 1.)

At the close of the trial in this cause, the learned circuit judge held that there was no evidence for the jury, tending to establish that the bridge in question was originally insufficient, or negligently constructed, or impeaching the competency of the defendants' employees, thus in effect narrowing the inquiry to the single issue whether the defendants were guilty of neglect in exposing the plaintiff's husband to danger, and not taking sufficient care and precaution for the safety of their employees in respect to the bridge in question. The case comes here on appeal from an order of the special term, denying a new trial, but it was discusssed chiefly upon the exceptions taken upon the trial, and I think the decision of these exceptions will properly dispose of the whole case.

The first point discussed by counsel was the exception to the refusal of the circuit judge to order a nonsuit, at the close of the plaintiff's case. When the plaintiff rested, she had proved that the bridge fell from decay; that one of the chords of the bridge was badly rotted, and a great many pieces of the bridge were decayed, more or less; that "four or five posts were rotten at the tenons clear through;" that the bridge had been built ten years ago, of timber but partially seasoned, and then painted, thus causing dry rot; and by the testimony of several experienced bridge builders, that such a bridge could not reasonably be expected to stand over from five to eight years. Upon this undisputed testimony, I think the circuit judge would not have been warranted in taking the case from the jury. The plaintiff's testimony certainly tended to establish at this stage of the trial, that this bridge had been retained in use by the defendants several years after it should have been rebuilt or repaired, and had

not been subjected to any proper tests to ascertain its true condition as developed by inspection of its timbers after its fall. This exception, I think, therefore, is not well taken.

But this case really turns and depends chiefly, I think, upon the principles asserted in, and the exceptions taken to, the charge. After the charge, the counsel of the defendants made several requests to the circuit judge to charge, and the judge charged in several instances as requested. In one of the requests the judge was asked to instruct the jury that in order to charge the defendants it was necessary to show that the decay in this bridge, if the bridge fell from decay, was known to some of the defendants' employees, and an omission on their part thereafter to remedy the defect. To this request the judge said, "yes, to this proposition, if the defendants were satisfied to have the jury so instructed." The counsel thereupon requested the judge to take the case from the jury, as there was no evidence tending to show such knowledge or admission. The circuit judge refused to do so, and the counsel then duly excepted.

If the defendants' counsel had been content to rest upon this exception, I think it would have been a valid one, for it is quite clear that there is no evidence in this case that would have warranted the jury in finding that the defendants omitted to repair this bridge after any of their employees knew of its decay and unsoundness. But this request and instruction, I think, was virtually waived by the counsel, and revoked by the judge in the subsequent request of the counsel, and the final instructions by the judge to the jury.

The defendants' counsel then requested the court further to instruct the jury that in order to charge the defendants, it was necessary to show that the decay in this bridge, if it fell from decay, was known, by some notice or otherwise, to the president and directors. "The court said, this is so with this addition and qualification : That if the board of directors, by the exercise of that skill and prudence which is to be expected by persons occupying the same position, could have

Warner *v.* Erie Railway Company.

ascertained or known the defect in the bridge, the failure to ascertain it on their part would. make the defendants liable, because it is negligence, and substantially the same as if notice had been given to the board."

To 'this charge, as given, and as it varied from the request, the defendants duly excepted. This exception presents the chief point upon which the action depends, and the instruction to which it relates, doubtless led to, and constitutes the basis of the verdict rendered in the cause. This instruction coincides with the general tenor of the charge, and is in substance nothing more than a repetition of the leading idea running through it.

The learned judge had previously said in this charge, that " the defendants being a corporation, the only manner in which they could be recognized as having a tangible existence was by means of its board of directors ; that such board, for the purposes of this action, might be regarded as the corporation itself ; that such board was the responsible agent whose acts are drawn in question in the controversy in this case ; that the question was whether the board of directors had been guilty of a want of proper care and diligence ; that it was the duty of such board, so far as it could be done by the exercise of reasonable skill and diligence, to see that the road was properly constructed ; that the bridge was put up in a proper manner and maintained in an ordinary, reasonable and firm condition for the purpose and use for which it was intended ; that if the board of directors failed to discharge that duty, then the defendants would be liable for any injuries occasioned thereby to any person in their employment."

The difficulty in this case, in stating and applying to the evidence the rules of law applicable thereto, arises entirely out of the fact that the defendants are a corporation, acting by, and performing all their rights, and exercising all their functions and duties through the instrumentality of numerous officers and agents. A certain degree of confusion of

Warner *v.* Erie Railway Company.

ideas, or indistinction, seems for this reason to attend the examination and decision, in many instances, of the cases constantly arising in the courts against railroad and other corporations. The courts have been embarrassed in their efforts to apply to these corporations the same rules of law which apply to natural persons; and to hold corporations to the same measures of responsibility toward their employees that exists between master and servant in other relations of labor or service. When it was first decided in our courts that common carriers might exempt themselves from responsibilities by express contract, I perceived that the tendency of this doctrine, in connection with the other kindred doctrine, that the principal is not liable to the agent for injuries received from the negligence of another agent in his employment, was in a large degree, if not entirely, to strip the employee of corporations of that right of protection from his master or employer, and redress for injuries received, that existed at common law, as between natural persons. It was in reference to this tendency of these two doctrines that I said, in *Bissell* v. *The New York Central R. R. Co.* (29 *Barb.* 613,) that " when a railroad or other corporation assumes the duty of common carrier, and acted, as they must, entirely by officers and agents, I concur that they could not contract for exemptions from responsibility for whatever pertained to the *proprietorship* of the railroad, nor for the acts of that class of superior agents who act for and in place of the corporation as officers, directors or other managing agents, and who, as such, within the trusts confided to them, control and direct the operations of the corporation, and employ its inferior servants and agents," and insisted that such officers or agents should be decreed to represent the corporation, and stand in its place in respect to all rights of third persons. I reiterated the same views in *Perkins* v. *The same railroad Co.* (24 *N. Y. Rep.* 218, 219 ;) and the case of *Smith* v. *The same railroad Co.* (*Id.* 236,) was decided by my vote upon the same grounds, that the negligence, which in that case consisted in the use

of an unsafe car, was that of the corporation itself, and could not be thrown off upon any officer or agent. In the same volume, (*page* 410,) in the case of *Ryan* v. *Fowler*, the whole court had no difficulties in concurring with me in asserting and applying the rule that a master is bound to provide for the safety of his servant as between natural persons, precisely the same rule in effect asserted by the learned circuit judge in this case, except that he applied it to a corporation for the neglect or omission of its board of directors. The objections to this charge and the instructions in question are really, it seems to me, nothing more than that the learned judge applied the same law to a railroad corporation, through its board of directors, that he would have applied to a natural person under the same circumstances ; holding the corporation responsible for their neglect as though they were the corporation in fact, or as though they were natural persons acting for their own interests.

The fifth point in the argument of the learned counsel for the defendants is as follows : " The court erred in charging the jury, under the facts of the case, that there was a duty resting on the defendants so far as their employees are concernced, beyond furnishing a sufficient bridge and competent mechanics to examine it and provide ample means for repairing and reconstructing it."

The third point is also as follows : " The court, in effect, decided that the law requires something more of the board than to furnish a sufficient bridge and to employ competent and skillful men to examine, repair and reconstruct it when necessary." The whole tendency of this argument is to claim exemption for the defendants from all duty to their employees as *master*, after they, the directors, had caused the road to be properly constructed, and employed proper agents to control and run it. The learned counsel says further, in his points in respect to the charge and directions of the circuit judge : " That notwithstanding the defendants' board of directors had originally furnished a sufficient bridge and em-.

ployed competent and skillful mechanics to take charge of it and examine and repair and reconstruct it, when necessary, they had not discharged their full duty in this respect to their employees." This argument, if I do not misconceive it, and I have quoted it quite fully to avoid mistake, it seems to me does in effect contend for, and asserts, a rule of law which would strip every railroad laborer, or employee, of all protection from, or redress against, any master or principal after the railroad is completed and its control put into the hands of agents reputed to be competent. The argument of the defendants' counsel further objects to this charge, " that although the board of directors had done all that could be required of them in the employment of suitable and skillful mechanics to attend to the matters of said road requiring mechanical skill, still it imposes another duty upon them, and that was that they should as a board of directors, by the exercise of reasonable personal diligence and skill, have ascertained, themselves, whether the bridge had become defective, and that the failure on their part to do so was such negligence as rendered the defendants liable in this action." The learned circuit judge did not mean to be understood by the jury, and I think could not have been so understood, that the directors of the defendants' company were bound to give their individual personal charge to the details of the business of conducting the said railroad, or of running the trains thereon, or that they should possess particular scientific or mechanical skill in respect to the work of constructing, maintaining or repairing said railroad or its machinery. It is doubtless true, as suggested by defendants' counsel, that these directors, in fact, were scattered over the country and seldom met, and knew little in fact, personally, of the actual practical operations of said road, and that they probably, as a board, did little more, individually, than appoint a superintendent, chief engineer and other officers and agents to take special personal charge of the details of its business, the selection and employment of its subordinate agents, engineers

and other employees. The law, doubtless, does not require that the directors of a railroad corporation, as individuals, should possess particular professional or mechanical knowledge or skill in engineering, bridge building or railroad construction or repair, or that they possess more knowledge or skill in respect to such matters than men ordinarily do, but it does require that they, as a board representing the corporation, exercise ordinary care and diligence in providing for the construction, care and maintenance of the railroad of which they are the exclusive governing and controlling body; that they execute the trust confided to them by the stockholders with fidelity and care, by providing with reasonable care and caution for the safety of the employees of the company, so that they be not subjected to unnecessary and unreasonable risks and danger in the service and work of the company.

It is not necessary to charge the defendants with negligence, that the directors knew or had notice of defects in their machinery, or in the construction of the railroad, or in its bridges or otherwise. It is their duty, acting for the corporation, to anticipate decay and failure in their works and structure, and machinery, and provide against such decay and failure in their works in season to prevent injury or damage; and a clear omission to do so on their part is negligence, and negligence of the coporation. It matters not that they employ skillful and competent agents, and trust to such agents. The appointment of competent and skillful agents is simply the discharge of a single duty. It will save the corporation from liability for negligence on that simple ground.

The appointment of unskillful or incompetent agents would of itself, if knowingly and heedlessly done, as we have seen, constitute negligence and give a cause of action to any person injured by such neglect. But if skillful and competent agents neglect their duty to the injury of other servants of the corporation or others, the corporation is not absolved. Such neglect is still the neglect of the cor-

poration. Unless the directors and that class of superior agents who do the work of the principal, who employ its operatives and set its machinery in motion, stand thus in legal effect in the place of a master to the subordinate agents and workmen, then such subordinates have really no protection from any superior or master or employer, and must look to such agents individually and personally, many of whom doubtless will be found entirely worthless, for redress for any injury sustained from their negligence, default or misfeasance. If the circuit judge, instead of instructing the jury that it was the duty of the directors of the company to provide for the safety of the employees of the company, had advised them in the ordinary phraseology that it was the duty of the defendants to have done so, this language would have been clearly unexceptionable, but the inquiry then would have been who should discharge this duty. The defendants are a corporation without soul — a mere legal myth. Some human, intelligent moral agent must act for it and perform the duty of its legal ideal personality. Such agency must of necessity primarily be the agency created by the stockholders who are the real corporation. This agency, in the first instance, is the board of directors, and next to them and under them, the president, executive committee, superintendent, chief engineer and bridge builder, or other officer appointed by such board of directors. Such agent, in his particular department, by whatever name he may be called, who did in fact fulfill the duties of the directors or corporation as proprietor or master in his sphere, who did the work and performed the functions of principal or master and controlled in whole or in part the actual operations of the corporation, must be held to bind the corporation as *master* in respect to all its subordinate agents or servants, precisely as if no corporation existed and such persons were acting in their own behalf and for their own benefit.

In this view the charge and instructions are entirely right. These defendants were held liable for the neglect of the board

Warner *v.* Erie Railway Company.

of directors not as individuals but as representatives of the corporation, and they were held to bind and commit the said corporation precisely as if they were simply partners owning and controlling the defendants' railroad for their own use and benefit. (*New York and New Haven R. R. Co.* v. *Schuyler*, 34 *N. Y. Rep.* 30.) I am not surprised at the extreme ground taken in the argument by the learned counsel, that a railroad corporation when it has completed its road and commits its control to the hands of suitable, skillful and competent agents, is relieved from all obligations to answer its employees for damages which they may sustain from the negligence of their fellows. It is but a legitimate argument and conclusion from some of the later decisions following in the wake of *Priestley* v. *Fowler*, (3 *Mees. & Welsb.* 1 ;) and *Farwell* v. *B. and W. R. R. Co.*, (4 *Metc.* 49,) holding that a principal is not liable to any of his agents or servants for injuries sustained through the negligence of another servant or agent.

But this rule cannot prevail to this extent, unless the courts are prepared to hold that a corporation cannot commit a wrong ; cannot be guilty of a negligence ; and that redress for injuries arising from negligence, misfeasance, default or wrong, can only be obtained of the person doing the wrong, or committing the injury ; for it is quite true that all negligence, fault or wrong, presupposes an intelligent human agent, capable of committing crime, and of omitting and of violating duty, and of inflicting injury.

The tendency of the later decisions to lead to this conclusion, as between corporations and their agents and employees, I am pleased to see, has awakened attention, and is causing some reaction in the courts. In a recent case, in the Court of Appeals of Kentucky, (*The Louisiana and Nashville R. R. Co.* v. *Collins*, 5 *Am. Law Reg. N. S.* 265,) this question has received discussion, and the rule as declared in *Priestley* v. *Fowler*, and the American cases following that

case, repudiated in part, or rather restricted to what I think is its true limit—to those who are *fellow servants* in the same grade of employment, and who are not subject to the order or control of the others. In that case the plaintiff, a common laborer, in the employ of the defendants, was run over while discharging a duty to which he was assigned, by the carelessness of an engineer in the use of one of the defendants' locomotives. The court held that they were not fellow laborers; that the company was responsible for the negligence of the engineer; that the corporation were bound to observe care and vigilance and skill in proportion to the danger of neglect involved in the steam operations on a railway, and that in all those operations the invisible corporation, though never actually, is yet always constantly present, through its acting agents, who represent it, and whose acts, within respective spheres, are its acts.

In his note to this case, which is also inserted in his recent work upon the law of Railways, (*vol.* 1, 531,) the learned chief justice of Vermont says, in reviewing the English and American cases : " It is safe to hold the rule to be that the exemption of the principal from liability in these cases, extends to all cases where the servants are strictly *fellow servants* in the same department of service ; " and also that " all subordinates who are under the control of a superior, are entitled to hold such superior as representing the master, and the master as responsible for his incompetency or misconduct."

This is the sound rule on this subject, in my opinion, and coincides with what I have long insisted should be the law, in the cases of *Bissell* v. *Perkins*, (*supra*,) and other cases. Upon the whole, within the principle thus asserted, I think this case was properly disposed of at the circuit, and that the defendants were simply held, through their then directors, to their just and proper responsibility. Under the charge, as I think it should be construed, the jury must have found, in substance and to the effect, that the defendants, through their board of directors, and their other agents

Warner *v.* Erie Railway Company.

acting under their authority, were guilty of negligence in not taking the proper care and precaution to see to it and know that the bridge in question was safe and secure.

Considering the rule of duty on the part of the corporation to the public, in such case, to be that it is bound, for the protection of human life, and when it is in such constant peril, to exercise the highest degree of care, "the utmost care and skill," as Judge Gardiner says, (*Hegeman* v. *The Western R. R. Co.*, 13 *N. Y. Rep.* 26,) the jury must have been satisfied that the defendants in keeping this bridge in use beyond the period of five, or at the most of eight years, which the plaintiff's engineer and bridge builder considered the utmost period of its life, without repair and without inspection or examination by the application of any sure and proper tests to determine its soundness, were guilty of an omission of that care and prudence and duty which was demanded of them under the circumstances of the case. I do not think we can hold that this finding of the jury is so clearly without evidence, or against the weight of the evidence, as to warrant us in granting a new trial upon that ground. I think a new trial should, therefore, be denied, and a judgment ordered upon the verdict.

DANIELS, P. J. concurred.

MARVIN, J. dissented.

New trial denied.

[ERIE GENERAL TERM, September 2, 1867. *Daniels, Marvin* and *E. D. Smith,* Justices.]