CRUTY v. ERIE RAILWAY COMPANY, appellant.

*Master and servant — injury received by servant while acting within the scope of his employment.*

Plaintiff, an employee of a railway company, was, while engaged in inspecting the cars of defendant, a connecting railway company, upon the premises of defendant, injured by one of its trains. *Held*, that whether plaintiff was acting as the employee of his own or the common employee of both companies, he assumed all risks incident to his employment, and defendant was not liable for such injury.

APPEAL from an order denying a motion by defendant for a new trial and from a judgment entered thereon.    The action was brought by John Cruty to recover damages sustained by him from a personal injury alleged to have been occasioned by the negligence of the defendant.    Plaintiff was an employee of the Atlantic and Great Western Railway Company at Salamanca, in this State, and his particular business was to inspect for that company the cars which came on defendant's railway from the east, destined for the west by the railway of the Atlantic and Great Western Railway Company.    The railways of the two companies met at Salamanca and at the point of intersection there was a side track belonging to the defendant running east and west twenty-five hundred feet in length, upon which the freight cars of each company were taken from the main track of each road, by a switch, to be inspected and assorted. Frequently there were three and four freight trains following each other.    When such trains came from the east they were as they arrived put in charge of the yard-master, who, in connection with an engineer having a switch-engine, placed the cars upon the side track for inspection.    The switch-engine would receive the train at some distance east of the point where the switch joined the side to the main track, and give the train sufficient momentum to run from the main track over the entire length of the side track.    The engine would pass the switch before it was so opened as to take the train from the main track and at that point would be uncoupled and pass on.    A brakeman was placed on the freight cars to regulate their stopping.    The first train taken on to the side track from the east would be taken to near the west end of the side track before it was brought to a stand.    Then another train would be set in motion to pass on to the side track over the switch.    The second train of cars would be taken till it reached the rear car of the first train so that they could be coupled, then the third and fourth trains would be brought up in the same way.

The car inspectors of the Atlantic and Great Western Railway Company would commence inspecting the cars at the west end of the train and work toward the east.

On the occasion of the injury to the plaintiff he was engaged in inspecting a freight car forming part of a train which had been placed upon the side track a few minutes before he received the injury. The yardman brought in a second train of cars, and it is alleged

that it hit the standing cars so as to put them in motion when the plaintiff was under one of them, and he was thereby injured.

The case was tried at the Cattaraugus circuit May 26, 1873, before Mr. Justice BARKER and a jury.

At the trial the defendant moved for a dismissal of the complaint which was refused and the case was submitted to the jury, who found a verdict in favor of the plaintiff for $2,500.

*John Ganson*, for appellant.

*D. H. Bolles*, for respondent.

E. DARWIN SMITH, J. The plaintiff, at the time he sustained the injury for which this action was brought, was confessedly in the employment of the Atlantic and Great Western Railway Company, engaged in inspecting freight cars which had just arrived at the place where the injury was sustained (Salamanca), by the defendant's railroad from the east, and were switched off from its main track upon its side tracks, to be thence transferred to the Atlantic and Great Western company to be forwarded over its road.

Before receiving such cars from the Erie road, the Atlantic and Great Western company was accustomed to inspect them and to receive such as were in a sound condition and to mark and reject such as were unsound till they were repaired.

This work of inspection was done by the agents of the Atlantic and Great Western company deputed by it for that purpose and at its own convenience, but such inspection was obviously for the common benefit and interest of both companies. The cars inspected were the cars of the Erie company, and if injured or found unsound or unsafe, they were sent to the Erie shops for repairs before they were received and accepted by the Atlantic company. In this light the plaintiff was in fact and effect, it seems to me, substantially the agent of both companies in inspecting such cars. The Erie company was interested in the preservation of its cars and in the prompt transmission of the freight contained in them, which it had received as a public carrier and had thus far transported on the way to its destination.

In this view I think the judge should have charged as requested, that "if the plaintiff was upon this defendant's track under the circumstances detailed, while there he was in the same position as

any one of the defendant's employees and must take his chances with the rest. If, as the counsel then insisted, the plaintiff was there to do the business for both companies, then he stood in the same attitude as any other servant of the defendant."

I cannot see why this is not so. These cars were all upon the defendant's track and under its control, and at its risk at the time of this inspection. They had not been delivered to or accepted by the Atlantic and Great Western company. If they had been destroyed by fire on this track, it would have been at the loss of the defendant.

But upon the contrary assumption that this inspection was entirely in the interest and for the benefit of the Atlantic company, then the verdict is wrong and in direct conflict with the charge of the judge.

The defendant's counsel asked the court to charge, that "if the jury found from the evidence that the plaintiff was inspecting the cars in question on the defendant's track simply by the permission of the defendant for the benefit of his employer under his employer's direction, then he cannot recover." The court said, "I so charge in connection with the above proposition."

The proposition referred to was embraced in an answer of the judge to counsel on a request to charge in the words following: "I say if the jury find as a fact that he omitted to look up the track and could have seen if he had looked up there, then I cannot charge as matter of law that the omission was negligence."

This proposition does not, as I can see, affect or essentially qualify the charge made.

But as the jury did not find in conformity to this direction, they must have negatived it and found upon the other ground, that the plaintiff was not inspecting said cars by permission of the defendant simply for the benefit of his employer and under its direction, which in effect makes him the common agent of both parties in making such inspection. In this view the plaintiff was not entitled to recover, and I think in either view the plaintiff must be deemed in making such inspection to have been acting within the scope of his employment and must be held to have assumed all the risks which grew out of or were in any way incident to or connected with such employment. *Ryan* v. *Fowler*, 24 N. Y. 416; *Wright* v. *N. Y. C. R. R. Co.*, 25 id. 612.

But aside from this consideration, I do not think there was

the slightest element of negligence on the part of the defendant which would warrant a recovery against it. It had its trains of freight cars arriving close together, and these as they arrived were successively switched off on to the side track in the customary way and without any knowledge or notice or reason to suppose as the second or third trains arrived and were respectively switched off, that the plaintiff or any other employee of the Atlantic and Great Western company was then engaged in inspecting the cars of the first train.

There should therefore be a new trial, with costs to abide the event.

MULLIN, P. J., concured in the result upon the last ground.