MARY COLLINS *vs.* ALONZO HARRISON.

PROVIDENCE—DECEMBER 14, 1903.

PRESENT: Stiness, C. J., Tillinghast and Douglas, JJ.

(1) *Master and Servant. Domestic Servant. Duty to Provide Suitable Premises.*

Declaration alleged that plaintiff was employed as housekeeper by defendant, defendant agreeing to provide plaintiff with board and lodging; that the roof over the room in which plaintiff slept was out of repair and leaked, so that plaintiff's bed and bedding became wet and unfit to use; that plaintiff notified defendant of the condition of the room, and defendant promised, if she would remain in his employ, to repair the roof and provide suitable bedding; and that, relying on the promise, she remained seven days, being obliged to sleep in said room, by reason whereof she became sick. On demurrer:—

*Held*, that it was the duty of defendant to provide suitable shelter under the allegations of the declaration.

*Held*, further, that the effect of the promise to repair raised a question of fact whether plaintiff was excused from taking the risk after such promise, the conditions being whether the employer had sufficient time to repair, and whether, knowing the danger, plaintiff proportionately increased her own care and precaution.

TRESPASS ON THE CASE for negligence, on facts stated in opinion. Heard on demurrer to declaration, and demurrer overruled.

STINESS, C. J.   The plaintiff sues in an action on the case for negligence.   The declaration alleges that the plaintiff was employed by the defendant as housekeeper, the defendant agreeing to provide the plaintiff with board and lodging; that the roof over the room in which the plaintiff slept was out of repair and leaked, so that the plaintiff's bed and bedding became wet and unfit to use; that the plaintiff gave notice to the defendant of the condition of her room; that she could not sleep in it; that he then promised, if she would remain in his employ, to repair the roof and provide suitable bedding; and that, relying on the promise she remained seven days, being obliged to sleep in said room, by reason of which she became sick.

The defendant demurs to the declaration, on the following grounds:

(1)   That the declaration does not set forth any duty which the defendant owed to the plaintiff, for which she can maintain this action.

(2)   That the plaintiff was not bound to remain in the house after she learned of its condition, and that she did so at her own risk, the results of which are attributable to her own act.

(3)   That the declaration sets forth a promise by the defendant to repair, and a breach thereof by him, thus setting forth two causes of action in the same count, which makes it bad for duplicity.

(1)   The general rule is that a master is bound to provide appliances for a servant, and the term appliances is stated in 1 Bailey's Pers. Inj. 1, to include machinery, apparatus, and premises.   This rule is usually invoked in cases where a servant is employed in some mechanical work, but we fail to see why it is not equally applicable to a domestic servant.

Wood on Master and Servant, 2nd ed. § 83, p. 166, states the rule, where board and lodging are to be furnished by the employer, as follows: "So too, he (the employer) impliedly undertakes to furnish him (the servant) with suitable lodging and good and wholesome food."   Unfortunately, the case cited as authority on this point has no relation to it.   Still the rule is a reasonable one, and in the line of the general duty of a

master to a servant. Thus in *Ryan* v. *Fowler*, 24 N. Y. 410, it was held that a master was liable for injuries to a servant caused by the fall of a privy, insecurely attached to the factory in which the servant was employed.

In *Mahoney* v. *Dore*, 155 Mass. 513, it was held that an employer was liable to a domestic servant for the improper condition of an outside flight of stairs, by reason of which the servant fell and was injured. Knowlton, J., said: "The plaintiff had occasion to use these stairs frequently, as a servant of the defendant, and it was the duty of the defendant to keep them safe, so far as the exercise of reasonable care and diligence on her part would accomplish that result." See also *Fitzgerald* v. *Connecticut*, 155 Mass. 155; and *Clifford* v. *Denver*, 9 Col. 333.

The first ground of demurrer, as stated, is that the declaration does not set forth any duty which the defendant owed to the plaintiff, whereas the declaration explicitly sets forth that it became the duty of the defendant to furnish proper shelter, *etc.*, on his agreement to provide the plaintiff with board and lodging. Evidently the demurrer was intended to raise the question of a legal duty, and we have so considered it. We think it was the duty of the defendant to provide suitable shelter, under the allegations of the declaration.

The declaration covers the second ground of demurrer by stating that the defendant promised to repair the leak in the roof if the plaintiff would not leave his employment.

Durfee, C. J., said, in *Kelley* v. *Silver Spring*, 12 R. I. 112: "If, when the danger occurred, the plaintiff had notified the defendant of it, and had been induced to remain in his position by assurances that it should be remedied, or, as some of the cases hold, by a reasonable expectation that it would be remedied, then it would not necessarily be presumed from his knowledge of the danger that he had assumed the risk."

In *Jones* v. *New Am. File Co.*, 21 R. I. 125, it was held that the effect of a promise to remedy a defect is to raise a question of fact, whether, under the circumstances, the servant is excused from taking the risk after such promise; the conditions being whether the employer had sufficient time to make

the repairs, and whether, knowing the danger, the plaintiff proportionately increased his own care and precaution.

*King* v. *Interstate Co.*, 23 R. I. 583, distinguished *Clifford* v. *Denver*, 9 Col. 333, on the ground that the former case did not show a promise as was shown in the latter case.   See also *Stephenson* v. *Duncan*, 73 Wis. 404.

The third ground of demurrer is that as the declaration sets forth a promise it is bad for duplicity.

True, a promise is set out in the declaration, but not as a cause of action.   The obvious purpose is to excuse the continuance in service, and thus to avoid a demurrer on that ground. This is not duplicity.

The defendant's demurrer to the declaration is overruled.

DOUGLAS, J., dissenting.   I am unable to agree with my brethren that, independently of contract, a householder owes to his domestic servant the duty of repairing a leaky roof over the room in which she is lodged.   The rule which has become established for the security of workmen in manufactories where dangerous machines and instruments are used ought not, in my opinion, to be extended to the comparatively secure occupations of domestic service.

The analogous rule which requires an employer to furnish his workmen with reasonably safe tools and appliances has been held not to apply to ordinary implements not naturally dangerous.   As was said by Judge Miller, of the New York Court of Appeals, in *Marsh* v. *Chickering*, 101 N. Y. 396, 400, where a workman was injured by a ladder which he was using, " We have been referred to no adjudicated case which upholds the liability of a party under circumstances of the same character as those presented by the evidence here.   A rule imposing such a liability in the case considered would be far-reaching and would extend the principle stated to many of the vocations of life for which it was never intended.   It is one of a just and salutary character, designed for the benefit of employees engaged in work where machinery and materials are used of which they can have but little knowledge, and not for those engaged in ordinary labor which only requires the use of implements with

which they are entirely familiar." This case is cited in *Gowen v. Harley*, 6 C. C. A. 190; *Corcoran v. Milwaukee Gas Light Co.*, 81 Wisc. 192; and in all of these cases a promise by the master to furnish other implements is held not to excuse the servant who had assumed the obvious risks of those which were furnished.

The domestic servant takes the accommodation assigned to him as it is, and is at liberty to decline the employment if his quarters are not satisfactory. If the premises are out of repair he assumes the obvious risk of exposure to the weather, and the liability to discomfort and disease, which is as well known to him as to the master.

It seems to me unreasonable to consider that a leaky roof constitutes the chamber under it a dangerous place in any such sense as the words are used when applied to a mill or foundry filled with machinery or materials capable of inflicting the gravest injuries; and there is no such compulsion upon a domestic servant to occupy a particular room as upon a mill operative to work in a certain place upon a certain machine.

It is, of course, competent for the parties to agree specially that certain accommodations shall be furnished; and if such an agreement, made upon good consideration, is broken, no doubt the innocent party may recover damages for the breach, according to the rules governing actions on contract.

If the law did not impose the duty alleged, the obligation of the defendant in this case is based simply upon his promise to repair, and the plaintiff's action should have been assumpsit, not tort.

*Irving O. Hunt*, for plaintiff.
*James A. Williams*, for defendant.