Nov. Term, 1854.

GILLENWA-
TER
v.
THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

------

## GILLENWATER *v.* THE MADISON AND INDIANAPOLIS RAILROAD COMPANY.

A railroad company will not be exempted from liability for injuries incurred by a passenger while on their cars, produced by the carelessness of the ser-

Nov. Term,
1854.

GILLENWA-
TER
v.
THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

vants, upon proof that the servants were carefully selected by the company with reference to their competence, and that the negligent act was done without the sanction of the company.

Public carriers of passengers not only engage for the competent skill of their employees, but for its faithful and continued application.

The servants of a corporation are no more and no less than the servants of natural persons, and whatsoever is negligently done or omitted by them, is, as to the public, the employer's act.

Railroad companies are not to be distinguished from stage-coach proprietors in the degree of diligence required, and the extent of liability incurred, in the carrying of passengers.

Public policy demands that the law should be applied as rigidly to railroad companies as to any other species of passenger carriers.

The defendants employed the plaintiff to frame and build a bridge on their road across *Sugar* creek, and while he was engaged in the work, the defendants directed him to proceed in their cars to *Greenwood*, and assist in loading timbers for the bridge. While thus on their cars as directed, the servants of the defendants who had in charge the running of the train, so carelessly managed and ran the same, without the leave, sanction, or consent of the defendants, that they were thereby run off the track; by means of which the plaintiff's right hand was fractured and permanently injured, so as to disable him from pursuing his business of house-carpenter. *Held*, that the plaintiff was a passenger, and that the defendants were liable for the injury.

A railroad company is liable to a servant for an injury occasioned by the negligence of other servants of the company, where the duties of the latter, in connection with which the injury happened, were not common nor in the same department with those of the injured servant, and where the negligence of the injured servant did not contribute to produce the injury.

The circumstance that a passenger who has received an injury while on the cars of a railroad company, by the negligence of their servants, was traveling free of fare, does not exempt the company from liability for the injury.

*Wednesday,*
*November* 29.

APPEAL from the *Jefferson* Circuit Court.

STUART, J.—Trespass for injuries received on board the defendants' cars.

After setting out sundry introductory matters, the plaintiff alleges, that in *May*, 1851, the railroad company employed him to frame and build a bridge on their road across *Sugar* creek; that while engaged in the work, the company directed him to proceed on their cars to *Greenwood*, and assist in loading timbers for the bridge; that while thus on their cars as directed, the defendants so carelessly managed and run the same, that they were thereby thrown off the track down a bank; by means of which his right hand was fractured and permanently injured, so as

forever to disable him from pursuing his business of house-carpenter, &c.   The damages are laid at 10,000 dollars.

Nov. Term, 1854.

The company filed five pleas.   The first was the general issue.

GILLENWA-
TER
v.
THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

The second and fourth pleas are in substance the same; admitting the plaintiff's injury, and that it was done on their cars as alleged, by the carelessness of the servants of the company having charge of the train; but that said servants (conductor and engineer) were competent and skilful, &c., and that the negligence, &c., were wholly unauthorized by and entirely without the leave, sanction or consent of the defendant.

The fourth plea contains an additional averment, that at the time when, &c., the plaintiff was also the servant of the company.

The third and fifth pleas are in substance the same as the second, with the additional averment that the company had used reasonable diligence in the selection of her said servants.

General demurrer to each of the special pleas overruled, and judgment on demurrer for the company.

The sufficiency of these pleas to bar the plaintiff's action, is the only question presented.

The position assumed in the second, third and fifth pleas, is tacitly abandoned in the argument.   That the negligent act was done without the sanction of the company, or that their servants were carefully selected with reference to their competence, did not, either singly or collectively, constitute a bar to the action.   It is in vain that the person employed is skilful, if he neglect to use that skill.   Public carriers of passengers not only engage for the competent skill of their employees, but for its faithful and continued application. Story on Agency, s. 452.—1 Black. Comm. 432, note.— *Stokes* v. *Saltonstall*, 13 Peters 181.   The servants of a corporation are no more and no less than the servants of natural persons.   Whatsoever is negligently done or omitted, is, as to the public, the employer's act.   Whether the employer be a natural or artificial person, can make no difference.   For servants and agents are but the means

Nov. Term,
1854.

Gillenwa-
ter
v.
The Madi-
son and In-
dianapolis
Railroad
Company.

employed, and what they do the mode of action of the employer for the time being. It would be dangerous in the extreme to apply one rule to corporations and another to individuals. As to passenger carriers by stage, the law is well settled: they are liable for the utmost care of very cautious persons. *Barker* v. *Havens*, 17 Johns. R. 234.— 13 Peters 181, *supra*. Railroad companies are not to be distinguished from stage-coach proprietors in the degree of diligence required and the extent of liability incurred. " If even disobedience of a servant could be set up by a railroad company as a defence, when charged with negligence," the remedy of the injured party would in most cases be illusive, and the danger to the public enhanced. The disobedience of orders of the servant entrusted, is the "*ipsa negligentia*" which produces the mischief. *Philadelphia, &c., Railroad Company* v. *Derby*, 14 Howard 468. The same considerations of public policy demand that the law should be applied as rigidly to railroad companies as to any other species of passenger carriers.

Nor does it make any difference as to the liability of the company for the negligence of their servants, that *Gillenwater* was traveling on the road, at the time, paying no fare. So was *Derby* in the case above cited. 14 Howard, *supra*.

The demurrers to the second, third and fifth pleas were well taken, and should have been sustained.

The whole case, then, turns on the additional averment in the fourth plea. That averment is, that the persons by whose negligence the injury was produced, were the fellow-servants of the plaintiff, engaged in the same general employment; and it is therefore contended that he had no recourse on the common employer. In support of this position, Angell on Carriers 563, and some late decisions not yet officially reported, are cited.

To properly appreciate the doctrines advanced by text writers, it is often necessary to go back to the authorities on which they rely. And this is more especially advisable, if the questions are new, or the authorities conflicting. As the question raised is new in this state, and of vast import-

Nov. Term, 1854.

GILLENWA-TER v.
THE MADI-SON AND IN-DIANAPOLIS.
RAILROAD COMPANY,

ance in itself, it will be safer to go back at once to the leading cases. Those chiefly relied upon by *Angell* are *Priestley* v. *Fowler*, 3 Mees. and Welsb. 1, *Farwell* v. *The Boston and Worcester Railroad Company*, 4 Metcalf 49, and *Murray* v. *The South Carolina Railroad Company*, 1 McMullen 385.

The facts in *Priestley* v. *Fowler* were these. *Fowler* directed *Priestley*, his servant, to accompany and assist *A.*, another of *Fowler's* servants, in a van conducted by *A.*, and containing goods carried for hire. The van was overloaded, and broke down, causing serious injury to the plaintiff. The ground of recovery set up by *Priestley* was *the want of proper care in loading the van*. The *English* Court of Exchequer *held*, that there was no right of action; "because," in the language of the Court, "of the inconvenience and absurdity which would flow from such a principle." One of the examples of its absurdity put by the Court is, that a master would be liable to his servant for the negligence of a co-servant, the chambermaid, if she put him into a damp bed.

Whatever may be thought of the argument or the illustration, the case at bar is so clearly distinguishable from that as scarcely to need analysis. *Priestley* and his coservant, the conductor of the van, were intimately associated in the business entrusted to them by the common employer. *Priestley* must have been aware of the capacity of the van; indeed the presumption seems to be, that he had assisted in overloading it—at least, to the extent of riding in it. And the doctrine growing out of the facts of the case is, that the servant can not maintain an action against his employer for an injury, which his own negligence, together with that of his co-servants, had directly contributed to produce.

On the contrary, *Gillenwater* and those in charge of the cars had no duty to perform common to both, except, perhaps, the loading, and, as incident thereto, the unloading, of the timber. And it is not claimed that either the loading or unloading had anything to do in producing the acci-

Nov. Term,
1854.

GILLENWA-
TER
v.
.THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

dent. It is charged distinctly on the one side, and admitted on the other, that it was the careless running of the cars which caused the injury. In that act the plaintiff did not participate. During the passage to and from *Greenwood* and *Sugar* creek, *Gillenwater* had no control either of the cars or freight—no duty relating to them to perform. As to the duties belonging to the delinquent engineer and conductor, he was not in a position from which it could be implied that he contributed to the result. So that admitting the doctrine of *Priestly* v. *Fowler*, to the extent to which the facts before the Court warranted the decision, it does not apply to the present case.

In *Farwell* v. *The Boston Railroad Company*, the facts were, that *Farwell* was employed by the company as engineer on the passenger train. *Whitcomb*, another servant of the company, being in their employment as a switch-tender, and well known to the plaintiff as faithful and trustworthy, carelessly left a switch in a wrong position as *Farwell's* train was passing; whereby the cars were run off the track, and *Farwell* received the injury complained of. The Court held that he had no right of action against the company. It was called "an action of new impression, which, of itself, was held to be a strong argument against it." Much reliance was also placed on *Priestly* v. *Fowler*, *supra*. The additional reasons on which the Court proceeded were, that the servant contracts with reference to the risks of the employment; that he accordingly receives a compensation in wages for those risks; and that it would be contrary to public policy to permit a recovery, the tentency of which would be to produce carelessness among servants and agents, to the danger of the public.

So clearly is the case at bar distinguished from the *Farwell* case, that we are not called upon either to approve or dissent from the doctrine there held. The business of house-carpenter, even as applied to the specific case of building a railroad bridge, is an employment under the company, too remote to be embraced within the rule laid down in that case. To constitute the parties co-servants

of the company, it was held essential that the object to be accomplished should be one and the same, the employer the same, and that the persons employed should derive their authority and compensation from the same source. When all these elements concur, it is, says the Court, "extremely difficult to distinguish what constitutes one department and what a different department of duty. It would vary with the circumstances of each case." It is thus clearly admitted that where the duties do in fact belong to different departments, a distinction should be made.

Between the switch-tender and the engineer of the company, the connection was close and immediate. The object to be accomplished by both was the same. Their duties necessarily connected themselves together as parts of a whole. The passing of the cars in a given direction was the instant result flowing from their joint action.

Not so with the plaintiff in this case. His business of house-carpenter, as applied to the erection of a railroad bridge, did not even remotely link him with the careless management of that particular train. He had no participation in the duties, the neglect of which contributed to the injury complained of. Though in some sense a servant of the company, he was not a co-servant of the engineer and conductor, within the meaning of the *Farwell* case. He clearly "belonged to a distinct department of duty." As to the company, therefore, on the particular occasion, *Gillenwater* stood clothed with all the rights of passenger and stranger.

If the bridge-builder of the company be regarded as a co-servant of the engineer, within the meaning of the *Priestly* and *Farwell* cases, the principle becomes alike vicious and absurd, by the very extent of its application. Every person in the service of the company is brought within its range. Even the position of the legal adviser of the railroad is included. He too, is, in some measure, the company's servant. He derives his compensation and authority from the same source as the engineer, conductor and bridge-builder. Like them, though in a fainter degree, he

Nov. Term, 1854.

GILLENWA-
TER
v.
THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

Nov. Term,
1854.

GILLENWA-
TER
v.
THE MADI-
SON AND IN-
DIANAPOLIS
RAILROAD
COMPANY.

contributes to the ultimate objects of the company. Had he been on the train by the side of *Gillenwater* and injured by the same negligence, in a suit against the company he would have been summarily dismissed by the same argument. He would be told that his action was one of new impression, that he contracted with reference to the risks of the employment and reserved a compensation in fees with an eye to these risks. He would therefore be denied redress, because he was a *quasi* co-servant of the careless engineer. It would be difficult to imagine upon what principles either of justice or public policy such ruling could be supported. For the basis of implied contract and increased compensation, with reference to such risks, on the part of the carpenter and legal adviser, is wholly visionary.

But when it is held that the legal adviser, the carpenter, and all such *quasi* servants of the company are not co-servants within the meaning of the *Farwell* case, because their several duties belong to different departments, a result is attained, clear, just, and of easy application.

Had *Gillenwater* received the injury from the negligence of a fellow-carpenter in the same employment, while erecting the bridge or loading the timbers, a question would then have been presented within the range of the *Farwell* case. It would then have devolved upon us to decide between the conflicting authority of the Courts of *Massachusetts* and *Ohio*. 4 Metc., *supra*.—20 Ohio 415. As it is, we do not feel called upon to intimate any opinion either way.

If we had any doubt as to the soundness of the distinction we have made, the cautious concluding language of the *Massachusetts* Court would remove it and strengthen our position. The ruling is thus qualified. " Considering it as a nice question, we would add a caution as to any hasty application of the rule to cases not clearly within the same principle. Each case may be varied and modified by circumstances not appearing in this. We are far from intending to deny that there are implied warranties arising out of the relation of master and servant."

Nov. Term,
1854.

Gillenwa-
ter
v.
The Madi-
son and In-
dianapolis
Railroad
Company.

So that even in the opinion of the learned judge who gave the new doctrine its chief importance, it is to be cautiously applied, and strictly limited to cases within the same principle. This is the usual judicial language in relation to some legal heresy, of such long standing that the mischief is believed to be less to follow than to over-rule it. It is thus cautiously added that the principle should not be carried beyond the adjudicated cases. But it is rather an ominous introduction to a question admitted to be one of new impression. It strongly implies a suspicion of the correctness of the principle sought to be established.

Since then, however, (1842), the Courts of *New-York* have followed the same lead. *Brown* v. *Maxwell*, 6 Hill 592.— *Coon* v. *The Syracuse, &c., Railroad Company*, 1 Selden 492. The Supreme Court of *Massachusetts*, as late as 1849, reviewed their ruling in the *Farwell* case, and adhered to their former decision. *Hayes* v. *The Western Railroad Corporation*, 3 Cushing 270.

More recently, however, the doctrine of 4 Metc. 49, and 1 McMullen 385, was reviewed, and expressly repudiated, by the Supreme Court of *Ohio. The Little Miami Railroad Company* v. *Stevens*, 20 Ohio 415. *Dixon* v. *Rankin* is a weighty argument to the same effect. 1 Am. Railroad Cases 567, and note.

The leading case, *Priestly* v. *Fowler*, was decided by the *English* Court of Exchequer in 1837. No authorities are there cited. But the Court expressly say, they are at liberty to decide the question upon general principles, looking to the consequences of a decision the one way or the other.

The cases which go upon the opposite doctrine, also profess to settle the question upon principle chiefly. So that a question of such recent date, upon which respectable Courts differ so widely, can not be regarded as settled.

As already observed, the case at bar is so clearly distinguished from any of the cases cited on either side of this vexed question, that we are not called upon to intimate an opinion either way; leaving ourselves open to examine it on its merits, whenever it is directly presented in the record.

It is sufficient that *Gillenwater* was at the time a pas-senger. The company are, therefore, liable for the injury received. Their guarantee to the public is, that their ser-vants are persons of competent skill, and that they will use due diligence in its application. In a somewhat similar case, where one of the stockholders of the railroad company was on the cars, traveling gratuitously by invitation of the president, and was injured by a collision, the company were held liable. *Grier*, justice, adds, "that any relaxation of the law affecting railroad companies as passenger car-riers, would be highly detrimental to the public safety." 14 Howard, *supra.*

The Court below, therefore, erred in overruling the de-murrer to the fourth plea.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*S. C. Stevens*, for the appellant.

*J. G. Marshall* and *W. M. Dunn*, for the appellees.