Columbus and Indianapolis Central Railway Co. *v.* Arnold, Adm'r.

———————◊———————

COLUMBUS AND INDIANAPOLIS CENTRAL RAILWAY COMPANY *v.* ARNOLD, Administrator.

NEGLIGENCE.—*Railroad.*—*Liability for Injury to Employee.*—Suit by an administrator, for the benefit of the children and heirs at law of the deceased, against a railroad company, the complaint alleging, that the decedent had been in the employment of the defendant as fireman on a freight engine for about two months, when, on a day mentioned, he was ordered by defendant to serve as fireman on a particular engine attached to an express passenger train, then running on said road between certain points named; that said engine "was old and rickety, with a weak, defective, patched up, and leaky boiler," which was not strong enough to endure a high pressure of steam, and could not be used with safety in drawing a train of any kind, and that its use to an express train, in its weak and unsound condition, involved great peril to the lives of passengers and employees; that the deceased did not know, and had no means of knowing, the weak and unsafe condition of said engine when he was placed upon it as fireman; that defendant, with full knowledge of the defective and unsafe condition thereof, carelessly and negligently caused the same to be used in drawing said express train; that on the same day the boiler exploded, by reason of its defective and un-

Columbus and Indianapolis Central Railway Co. *v.* Arnold, Adm'r.

sound condition, and caused the death of the decedent, without any negligence or fault on his part.

*Held,* that the complaint was good on demurrer.

SAME.—*Master and Servant.*—An employer or master is not liable, in the absence of an express contract to that effect, for injuries suffered by one of his employees solely through the carelessness or negligence of another employee of the same master, engaged in the same general business. Nor is the master rendered liable by the fact that the employee receiving the injury is inferior in grade of employment to the one by whose negligence the injury is caused, if the services of each in his particular sphere or department are directed to the accomplishment of the same general end. *Gillenwater* v. *The M. & I. R. R. Co.,* 5 Ind. 339, and *Fitzpatrick* v. *The N. A. & S. R. R. Co.,* 7 Ind. 436, disapproved.

RAILROAD.—*Board of Directors.*—The board of directors of a railroad company are its immediate representatives and occupy the relation of master to the various employees engaged in operating the road and superintending and performing the business of the company in its various departments.

SAME.—*Master-Machinist.*—A master-machinist who has the immediate charge, control, and direction of the engines and other machinery of a railroad company and the repairs thereof and the control and direction of the engineers and firemen on the trains, is a fellow-servant of such a fireman.

SAME.—*Responsibility to Employee.*—The principle of *respondeat superior* does not apply as between a railroad company and its employees, and the company can only be held responsible to the employee injured without his own fault, while in the discharge of his duty, where the injury is caused by the negligence or failure of the board of directors to perform some duty devolved upon them by express contract with the employee, or which is implied from their relation of master to the employee.

SAME.—*Implied Duties.*—It is the duty of a railroad corporation to use every reasonable care in the proper construction of its road, in supplying it with the necessary equipment, including properly constructed engines, and the necessary and proper materials for its repair, and in the selection of competent, skilful, and trusty subordinates to supervise, inspect, repair, and regulate the machinery, and to regulate and control the operations of the road. If these duties are performed with care and diligence by the directors, and one of the persons so employed is guilty of negligence, by which an injury occurs to another employee, it is not the negligence of the directors, or master, and the company is not responsible.

SAME.—*Notice.*—Where the directors have performed these duties and have placed the engines of the company under the immediate charge, control, and direction of a competent and trustworthy master-machinist, and have furnished him with adequate materials and resources for their repair, notice to the directors that an engine is out of repair and unsafe for use is not, in the absence of notice that it is being so used, sufficient to render the company liable for an injury to a fireman employed by the company, while in the performance of his duty upon such engine under the direction of

the master-machinist, caused by the explosion of the boiler, by reason of its defective condition, without his fault or negligence or the fault or negligence of the engineer in charge.

APPEAL from the Marion Common Pleas.

This was an action by James H. Arnold, as administrator of James H. Scott, deceased, against the Columbus and Indianapolis Central Railway Company, the appellant, for causing the death of the decedent, an employee of the company.

The suit was brought for the benefit of two infant sons of the deceased, who are his only children and heirs at law.

The complaint is in two paragraphs. The first paragraph alleges, that the decedent had been in the employ of the appellant, as fireman on a freight engine, for about two months, when, on the morning of the 5th of February, 1867, he was ordered by the appellant to serve as fireman on engine No. 16, attached to an express passenger train, then running on said road between Indianapolis and Columbus, Ohio; that said engine "was old and rickety, with a weak, defective, patched up, and leaky boiler," which was not strong enough to endure a high pressure of steam, and could not be used with safety in drawing a train of any kind, and that its use to an express train, in its weak and unsound condition, involved great peril to the lives of both passengers and employees; that the deceased did not know, and had no means of knowing, the weak and unsafe condition of said engine when he was placed upon it as fireman; that the appellant, with full knowledge of the defective and unsafe condition thereof, carelessly and negligently caused the same to be used in drawing said express train, and on the same day the boiler exploded, by reason of its defective and unsound condition, and caused the death of the decedent, without any negligence or fault on his part.

The second paragraph contains, substantially, the same averments as the first, except it alleges, that the explosion of the boiler and death of Scott occurred in the State of Ohio, and sets out the statute of that State, authorizing

suits by administrators in such cases, which is substantially the same as the statute of Indiana on the same subject.

A demurrer to each paragraph of the complaint was overruled, and the ruling excepted to. An answer, consisting of a general denial and several special paragraphs, was then filed, upon which issues were formed and a trial was had, resulting in a verdict for the plaintiff for twenty-five hundred dollars.

A motion for a new trial being overruled, judgment was rendered on the verdict. Other facts in the case, as well as the questions involved, are stated in the opinion of the court.

ELLIOTT, C. J.—The first question in the case is presented by the demurrer to the complaint, which was overruled by the court. We think there was no error in that ruling. The complaint alleges, that the engine was old, and the boiler was so worn and defective that it was unsafe, and its use involved great peril to the lives of the employees, of which the appellant had full notice, though the deceased was ignorant thereof, and that the appellant, knowing the unsafe condition of the engine, negligently and carelessly caused it to be used in drawing the express train; that by reason of its defective and unsound condition, and without any fault of the deceased, the boiler exploded and caused his death.

A railroad company, occupying the relation of master in such cases, is bound to its servants and employees on its trains to use reasonable care in furnishing the road with proper and safe machinery, and in the employment of competent and skilful agents to superintend and keep it in proper repair.

The master is not responsible to an employee for an injury occasioned by the carelessness or negligence of a co-employee or fellow servant. But here it is alleged that the appellant, the master, was notified of the unsafe condition,

178 SUPREME COURT OF INDIANA.

Columbus and Indianapolis Central Railway Co. *v.* Arnold, Adm'r.

of the engine, and negligently caused it to be used, whereby the fatal injury occurred. The negligent acts complained of are imputed to the master, and not to an employee; and if the allegations are true, the appellant is clearly responsible.

The question of the relation of co-employees to each other and the duty and liability of the master to them will be more fully discussed in a subsequent part of this opinion.

The evidence given on the trial is before us, and discloses the following facts, in reference to which there is no controversy: Thomas V. Losee was in the employ of the company, as master-machinist for the western division of the road, and had occcupied that position at Indianapolis from 1863 until the time of the trial; and as such he had the immediate control, direction, and supervision of the engines and other machinery, and of the engineers and firemen on the engines on that division of the road. He selected the engine, engineer, and fireman for each particular service or train, and ordered them accordingly. He was a skilful and experienced master-machinist, and entirely competent to the proper performance of the duties required of him.

On the morning of the 5th of February, 1867, at Indianapolis, by Losee's direction, one Lederer was put in charge of engine No. 16, with Scott as fireman, in running an express passenger train between that place and Columbus, Ohio; and on the same day, whilst so engaged, the boiler of the engine exploded, when in the State of Ohio, and caused the death of Scott. The explosion occurred in the fire-box. The engine was thrown some distance from the track and its direction reversed. It was a Hinkley engine, built at the Boston Locomotive Works, and purchased by the company in 1852. It was a good engine, and had done valuable service.

A new fire-box was placed in it in 1862, which was repaired and put in good order about four or five months before the explosion. The engine, for some time previous, had been used mostly for freight purposes, though for three

or four weeks immediately preceding the explosion it was used with a passenger train, and did good service.

Neither the engineer nor Scott had been in the employ of the appellant over about two months, and neither had served on engine No. 16 until the day of the explosion.

The instructions given by the court to the jury were excepted to by the appellant, and exceptions were also taken to the refusal of the court to give numerous instructions asked by the appellant.

A recovery was sought on the grounds that the engine was old, worn out, and unfit for service, and that its condition was known to Losee, or might have been known to him by a proper examination, which he failed to make, and carelessly and in neglect of his duty ordered it to be used in its unsafe condition, and thereby caused the death of Scott; that Losee, as master-machinist, was the representative of the appellant, and not, in a legal sense, a fellow-servant or co-employee with Scott; and that the appellant was, therefore, responsible in damages for the death of Scott, caused by Losee's negligence.

This theory is clearly sustained by the instructions of the court to the jury, and in the refusal to give any of the various instructions asked by the appellant maintaining a contrary doctrine. Thus, the court instructed the jury as follows:—

"3. It was the duty of the defendant to see to it that the road was equipped with sufficient, suitable, and safe engines and machinery, and materials of the necessary quality, and men of the knowledge, skill, care, and capacity, necessary for the well and faithful discharge of all the duties that appertain to the positions they severally occupied. For the faithful discharge of this obligation the defendant is holden to each and every person whom it employs in the business of running the road. And if you find from the evidence that the defendant had knowledge, or in the exercise of due care might have known, that the engine in question was defective, insufficient, and unsafe for the service in which the same was employed, and the explosion which re-

sulted in the death of Scott was caused by the defective and unsafe condition of the engine, *without the fault or negligence of the deceased or of the engineer contributing to the result*, in that case the plaintiff will be entitled to recover."

"4. The amount or degree of care which the defendant is bound to use, in order to see that her machinery and engines are in proper order and condition for the service required of them, should be proportioned to the risk and danger to life which would probably result from negligence and carelessness in this regard."

"7. If the engine had been recently overhauled by a competent and skilful machinist, *and he used due care and diligence* in putting her in repair, and put her upon the trip at the time of the accident, *in a safe and good condition, capable of making the trip*, if used in a proper manner, but she was carelessly, negligently, or unskilfully used by the deceased or the engineer in charge, and the accident resulted from careless usage, in that case the plaintiff cannot recover."

One of the instructions asked by the appellant, which the court refused to give, is as follows:—

"15. The business of a railroad is, of necessity, conducted by a number and variety of agents and employees, and the condition and control of its machinery are also, of necessity, under the supervision of agents and employees; and when one accepts a situation on any given road, where he must necessarily be exposed to injury by any want of care or by the recklessness of a fellow-servant, he must be held to have entered such employment in view of such hazard, and he cannot recover for an injury resulting from the carelessness or recklessness of a fellow-servant, if the company has been prudent and careful in the selection of such fellow-servant, and especially if the fellow-servant through whose act or negligence the injury results is and had been a prudent, careful employee, and competent to the work placed under his care, although the particular act

complained of may have been his gross negligence or recklessness."

The appellant also asked the court to instruct the jury as follows:—

"11. The defendant is not liable for injuries resulting from latent defects in machinery such as cannot be detected by the care and skill of those competent to test the sufficiency of the machinery on the road." The court refused, however, to give it as asked, but gave it after adding to it these qualifying words: "*if care and diligence is used in examining and inspecting the machinery.*"

This instruction was also moved by the appellant, viz.:—

"21. So far as concerns the employees of railroad companies, there is no implied warranty of life or guaranty against injury; but the employee takes his place subject to all the dangers incident to the position. The company is only bound to furnish competent and careful employees, to keep her machinery in repair and safe condition, so far as she can by competent and careful workmen; and if you believe from the evidence that she did it in this case, the plaintiff cannot recover, though the deceased came to his death by the explosion complained of." This the court refused, but in lieu thereof instructed thus: "So far as concerns the employees of railroad companies, there is no implied warranty of life or guaranty against injury, but the employee takes his place subject to all the dangers incident to the position. The company is only bound to furnish competent and careful employees, to keep her machinery in repair and safe condition, so far as she can by competent and careful workman, *using due care to see that her machinery is in good and safe repair*; and if you believe from the evidence *that she did use such care in this case*, the plaintiff cannot recover, though the deceased came to his death by the explosion complained of."

The instruction, as asked, claims that the appellant was not responsible, if the employees having the care and management of the machinery and of its repairs and condition

were competent, and careful in the discharge of their duties, although the decedent came to his death by the carelessness of such co-employees. But by the modification made by the court, which we have italicized, an entirely different principle is asserted. The instruction, as given, in effect, said to the jury that the appellant was bound to see to it that the machinery of the road was kept in proper order, and if the engine was in an unsafe condition, and was thus used by order of the master-machinist, and if the explosion resulted from the unsafe condition of the engine, the appellant was responsible, notwithstanding the master-machinist was competent, and careful, and worthy to be trusted in his position.

It is a well settled principle of the law, that the employer or master is not liable for injuries suffered by one employee solely through the carelessness or negligence of another employee of the same master, engaged in the same general business.

Each employee engaged with others in the service of a common master takes upon himself the liability to injury resulting from the negligence of his co-employees. The hazard is incident to the nature of the employment into which he enters, and in respect to which the master is not an insurer, in the absence of an express contract to that effect. Nor is the master liable by the fact that the employee receiving the injury is inferior in grade of employment to the party by whose negligence the injury is caused, if both are employed in the same general business, or in other words, "if the services of each in his particular sphere or department are directed to the accomplishment of the same general end." *Warner* v. *The Erie Railway Co.*, recently decided by the Court of Appeals of N. Y. and reported in 8 Am. Law Reg. (N. S.) 209; *Priestley* v. *Fowler*, 3 M. & W. 1; *Coon* v. *Utica, &c., R. R. Co.* 5 N. Y. 492; *Albro* v. *Agawam Canal Co.*, 6 Cush. 75.

In *Gillenwater* v. *The M. & I. R. R. Co.*, 5 Ind. 339, and *Fitzpatrick* v. *The N. A. & S. R. R. Co.*, 7 Ind. 436, it was

held, that a railroad company is liable to a servant for an injury occasioned by the negligence of other servants of the company, where the duties of the latter, in connection with which the injury happens, are not common or in the same department with those of the injured servant, and where the negligence of the latter has not contributed to produce the injury. But this limitation of the exemption of the company from liability in such cases is not recognized in any of the subsequent cases; and it is now settled in this State, that the employer is not liable for an injury to one employee, occasioned by the negligence of another engaged in the same general undertaking. *The O. & M. R. R. Co.* v. *Tindall,* 13 Ind. 366; *Wilson* v. *The Madison &c. R. R. Co.,* 18 Ind. 226; *Slattery's Adm'r* v. *The Toledo & W. R. W. Co.,* 23 Ind. 81; *The O. & M. R. R. Co.* v. *Hammersley,* 28 Ind. 371. In *Slattery's Adm'r.* v. *The Toledo & W. R. R. Co.,* *supra,* WORDEN, J., quotes, with approbation, from the decision in *Wright* v. *The N. Y. Central R. R. Co.,* 25 N. Y. 562, as follows: "Neither is it necessary, in order to bring a case within the general rule of exemption, that the servants, the one that suffers and the one that causes the injury, should be at the time engaged in the same operation or particular work. It is enough that they are in the employment of the same master, engaged in the same common enterprise, both employed to perform duties and services tending to accomplish the same general purposes, as in maintaining and operating a railroad, operating a factory, working a mine, or erecting a building. The question is whether they are under the same general control."

To the same effect is the case of *Manville* v. *The Cleveland &c. R. R. Co.,* 11 Ohio St. 417, where it is said, that "those employed in facilitating the running of the trains, by ballasting the track, removing obstructions, and those employed at stations, attending to switches, and other duties of a like nature upon the road, as well as those upon the trains, operating, may all be well regarded as fellow-servants in the common service."

184 SUPREME COURT OF INDIANA.

Columbus and Indianapolis Central Railway Co. *v.* Arnold, Adm'r.

In the case at bar, Losee, as master-machinist, had the immediate charge, control, and direction of the machinery, and of its repairs, as well as the control and direction of the engineers and firemen on the trains.

He and the deceased were both employees of the appellant, engaged in the same general undertaking, operating the road—indeed, in the same department, the one serving under the immediate direction and control of the other. They were fellow-servants, and the appellant is not responsible for an injury to the one, caused by the negligence of the other.

But it is insisted, that the appellant was bound to the employees to furnish the road with sound and safe machinery, and to keep it in safe repair and condition, and if the explosion of the boiler and the death of the deceased were caused by the use of the engine when in an unsafe condition, the fault is attributable to the appellant, and the plaintiff is entitled to recover. We do not think this position is sound in principle, or sustained by the weight of authority, though cases may be found to support it.

The board of directors of a railroad company are its immediate representatives, and occupy the relation of master to the various employees engaged in operating the road and superintending and performing the business of the company in its various departments. When an injury results to a passenger on a train, or to a stranger, from the negligence or carelessness of an employee in the discharge of the duties devolving upon him, the principle of *respondeat superior* applies, and the company is responsible in damages; but this principle does not apply as between the company and its employees, and in such cases the company can only be held responsible to the employee where the injury is caused by the negligence or failure of the board of directors to perform some duty devolved upon them by express contract with the employee, or which is implied from the duties devolving upon them in their relation of master to the employee. The directors of such a corporation, from

the very nature of the organization and the business in which it is engaged, are not expected personally to superinted the various operations of the road. There is no implied obligation that they should do so; nor is it to be presumed that they are selected with a view to their qualifications and skill for the performance of many of the duties required in constructing, equipping, and operating the road. The master is not liable to his servant, unless there be negligence on the part of the master, in that which the master has contracted or undertaken, either expressly or impliedly, to do.

It is the duty of such a corporation to use every reasonable care in the proper construction of its road, and in supplying it with the necessary equipment, including properly constructed engines, and the necessary and proper materials for its repair, and the selection of competent, skilful, and trusty subordinates to supervise, inspect, repair, and regulate the machinery, and to regulate and control the operations of the road. If these duties are performed with care and diligence by the directors, and one of the persons so employed is guilty of negligence by which an injury occurs to another, it is not the negligence of the directors, or master, and the company is not responsible. This position is sustained by the rulings of this court in *The Chicago &c. R. R. Co.* v. *Harney*, 28 Ind. 28, and *The O. & M. R. R. Co.* v. *Hammersley, id.* 371.

In the case of *Warner* v. *The Erie Railway Co., supra,* the action was brought to recover damages arising from a personal injury which resulted in the death of one of the defendant's employees, a baggageman, on a train which was precipitated into a stream by the falling of a bridge. The jury found that the bridge fell from decay in its timbers. The bridge was properly constructed and was originally of sufficient strength for the purposes for which it was intended. It was held, that the company was not liable, in the absence of proof that the directors of the company had notice of the unsafe condition of the bridge.

The case of *Wilson* v. *Merry*, decided in the English

House of Lords, in May, 1865, and reported in the Law Reports, Appellate Series, part 3d, for July, 1868, p. 326, is said to be a very instructive case on this subject. The report containing the case is not in our reach, but we find a somewhat comprehensive notice of it in *Warner* v. *Erie Railway Co., supra,* the substance of which is as follows:—

It was a Scotch appeal in a case where a verdict had been recovered against the proprietors of a coal-mine, for the death of a party occasioned, as was alleged, by the defective construction of a scaffold in the mine. "The case turned upon the liability of the master for an injury to his employee, where the master did not personally superintend the work, but devolved it upon a suitable mechanic or foreman, superior in grade to the injured employee. Opinions were given by the Lord Chancellor, Lord CAIRNS, and by the ex-Chancellors, Lord CRANWORTH and Lord CHELMSFORD, all substantially concurring in the conclusion, that the duty of the master was to select proper and competent persons to do the work, and furnish them with adequate materials and resources for its accomplishment; and when he had done that, he had performed his whole duty. In the course of his opinion, Lord CAIRNS says: 'The master is not, and cannot be, liable to his servant, unless there be negligence on the part of the master, in that which he, the master, has contracted or undertaken with his servant to do. The master has not contracted or undertaken to execute in person the work connected with his business; but to select proper and competent persons to do so, and furnish them with adequate materials and resources for the work.' He adds, 'if the persons so selected are guilty of negligence, this is not any negligence of the master; and if an accident occurs to a workman to-day, in consequence of the negligence of another workman, skilful and competent, who was formerly, but is no longer in the employment of the master, the master is not liable, although the two cannot technically be described as fellow-workmen; negligence cannot exist, if the master does his best to supply competent persons. He can-

not warrant the competency of his servants.'" See, also, *Wright* v. *N. Y. C. R. R. Co.*, 25 N. Y. 562.

One of the cases cited by the appellee, and much relied on to sustain the rulings of the court below, is that of *Warner* v. *The Erie Railway Co.*, in the Supreme Court of New York, 49 Barb. 558; but that case, as we have seen, was subsequently reversed by the Court of Appeals, on the very point to which it is cited as authority. 39 N. Y. 468.

Here the evidence conclusively shows that Losee was skilful and competent, and that the shop of the appellant at Indianapolis was furnished with all the necessary appliances, and with adequate materials and resources, and skilful workmen to keep the machinery in repair.

Notice to the directors of the company that the engine was out of repair and unsafe for use would not of itself be sufficient to render the company liable. Such machinery is often liable to get out of repair and become unsafe. The directors did not, in person, superintend its repairs or direct its use, but devolved these duties on a skilful, competent, and trustworthy master-machinist, and furnished him with adequate materials and resources for its repair. They did not direct or authorize its use when in an unsafe condition, and are not responsible for its use in that condition, in the absence of notice that it was being so used. But there was no evidence even tending to prove that the directors of the company had any notice that the engine was in an unsafe condition, or that it was being so used.

We have discussed the questions involved in the case on the hypothesis that the engine was defective and unsafe, and was carelessly put into the service in that condition by Losee, and that the explosion was caused by the defective condition of the engine, and without any fault or negligence on the part of the deceased, or of the engineer in charge; but we are by no means satisfied that the evidence justifies such a conclusion. It was a rule of the service, that when an engine was out of repair, rendering it unsafe or unfit for the service required, the engineer in charge should report the

fact promptly to the master-machinist.  No such report was made as to engine No. 16, nor was there any evidence that the master-machinist had any notice, in fact, that it was in an unsafe condition or needed repairs; whilst the engineer who had been in charge of and daily used it for months, and up to the day on which the deceased was placed on it as fireman, testified that it was a good machine, in a safe condition and in good repair the day before the accident.  The only evidence to the contrary was that of the engineer in charge of it on the day of the explosion, who testified, that the boiler was leaking at the flues, in the flue-sheet; but the explosion is not ascribed to that cause. He further testified, that the explosion occurred in the fire-box, and without any fault on his part or that of the deceased.  When asked if he knew whether the fire-box and crown-sheet were old or new, he answered, that he did not know, and could not tell from outside appearances; that it was impossible to tell, when it was coated over with lime on the inside; that "it might very often look very well on the outside, while it was all rotten on the inside."  He was also asked, what was the cause of the explosion to the best of his knowledge and judgment; to which he answered, "The deficiency of the fire-box, as far as I know.  It was old and worn out."  His leg was broken by the explosion, and he did not examine the fire-box afterwards.  He had never run the engine until that day, and had no previous knowledge of it; and when it is remembered that he had just previously testified, that he did not know whether the fire-box was old or new, and could not tell from outside appearances, the only view he ever had of it, his opinion as to the cause of the explosion is entitled to but little weight.  On the other hand, the nature of the explosion and the evidence of witnesses of skill and experience very strongly indicate that the water was suffered to get too low in the boiler, in consequence of which—the steam being shut off for a time, when on a down grade—the water sank below the crown-sheet of the fire-box, which became highly heated, and

when the steam was let on the water rose upon the crown-sheet, in its heated condition, and thereby caused the explosion. But we need not discuss the evidence on this point. The court erred in the instructions to the jury as already indicated, and in refusing to give instructions 11, 15, and 21, as asked by the appellant, and a new trial should, therefore, have been granted.

Judgment reversed, with costs; and the cause remanded, for a new trial and further proceedings not inconsistent with this opinion.

*J. L. Ketcham* and *J. L. Mitchell,* for appellant.

*J. T. Dye* and *A. C. Harris,* for appellee.