JAMES W. DALLAS v. THE G., COL. & S. F. R'Y CO.

(Case No. 1674.)

1. DAMAGES — INJURY FROM NEGLIGENCE OF CO-EMPLOYEES.— A railroad company is not liable in damages for injury inflicted on one of its servants resulting from the performance of duties incident to the employment; nor is it liable for injuries resulting from the negligence of a co-servant, unless it be shown that such co-servant was incompetent and unworthy of trust, and that the company knew it.

2. SAME.— An employee of a railway company, employed by the month to watch its ties along the road, to prevent their destruction, went in obedience

to orders from his employer to procure a deed in favor of the company, and voluntarily got on its train, and after performing the duty was voluntarily returning on its train, when the train was thrown from the track and the employee injured. *Held*, that there was no error in a charge which instructed the jury that under such circumstances, no other facts being shown, the company was not liable in damages.

3. NEGLIGENCE.— The negligence of a servant of one grade is as much one of the risks incident to employment by a railway company as the negligence of the servant of any other grade, and it cannot be held that a servant contracts to run the risk of negligent acts and omissions on the part of one class of servants and not those of another class. Any other rule would be violative of sound public policy.

4. SAME.— In the main the authorities agree that the above rule is applicable to servants who, though employed in the same general business, have their service in distinct branches of it. Following Cooley on Torts, and cases cited.

5. CASES REVIEWED.— The cases of H. & T. C. R'y Co. *v.* McNamara, 59 Tex., 255; G., H. & S. A. R'y Co. *v.* Lempe, 59 Tex., 19, and T. & P. R'y Co. *v.* Kirk, referred to as not announcing a doctrine different from the decision in this case.

6. CHARGE OF COURT.— See statement of case for instructions given by the court in which, when considered with reference to the facts of the case, as disclosed in the statement and opinion, there was no error.

APPEAL from Washington. Tried below before the Hon. I. B. McFarland.

Suit instituted by appellant. The petition alleged in substance that plaintiff had been employed by defendant to guard the property of defendant, and especially to find out who had burned and destroyed a lot of ties, and to prevent the burning and destruction of other ties and property of defendant along its railroad and right of way from the Yegua creek to the town of Caldwell in Burleson county. That in the discharge of said duties he was required to ride on horseback along the line of road from the end of the track, then about ten miles north of Brenham, to the town of Caldwell. For this service he was paid $100 per month, and the board of himself and horse; that on the occasion of the accident he had been ordered to perform other and different service from that above mentioned, which service required him to ride on defendant's construction train; and while so riding he was injured by the cars being thrown from the track. Alleged negligence in the management of the train and sought to recover damages for his injuries.

Defendant filed general and special demurrers, general denial, and pleaded specially that plaintiff was a servant and employee and could not recover for negligence of a fellow-servant; that he went on the construction train voluntarily, without being required to do so; that the train was well manned with competent, skilful and sober

employees; that there was no negligence; that plaintiff had been accustomed to ride on the construction train voluntarily and against his orders, well knowing the danger, etc.

Verdict and judgment for defendant.

The plaintiff went on the train to Brenham, and having procured the execution and acknowledgment of a deed for appellee, in his employment, he on the morning of August 25, 1880, got on the defendant's train of cars at Brenham to return to Caldwell to have the deed recorded. The train consisted of a locomotive and nine flat-cars loaded with railroad iron, spikes and other material, and was in charge of the engineer, Sol Bills, and there were also two brakemen on the train. The plaintiff with four or five other persons got on the rear car and remained there until thrown off. When the train got about ten miles north of Brenham a cow was run over, and several cars, including that on which the plaintiff was riding, were thrown from the track and the plaintiff was very seriously injured. His right thigh was broken and the bone split, and he was also badly bruised and hurt, and had never recovered from said injuries.

The court charged the jury, among other things, as follows:

. . . 3. The railroad company, as a general rule, would not be responsible for injuries received by one of its servants while in the regular discharge of his duties by an accident resulting from a danger common to the employment, nor would it be held answerable for injuries resulting from the negligence of another of his co-servants, unless it shows that such other servant was incompetent and unworthy of trust, and that the company knew it.

4. The jury will therefore determine from the evidence, first, whether the plaintiff Dallas, at the time he received the injury, was acting as a servant of the company.

5. Upon this subject you are charged that if you believe, from the evidence, that the plaintiff Dallas was in the employ of the company watching its ties along said road, and that, while so employed, he, in obedience to orders to proceed to a point a few miles from Brenham, and procure a deed in favor of the company from another party, voluntarily got on defendant's train and went to Brenham, and, after having procured the deed as directed, he voluntarily started on defendant's train to return to Caldwell, where the deed was to be recorded, he was acting in the employ of the company, and was then acting as a servant of the company, and cannot recover in this action.

6. If, on the other hand, you believe from the evidence that plaintiff was not acting as a co-servant of other employees and servants of

the company at the time he received the injury, and if you further believe from the evidence that the accident was caused by the negligent conduct of the locomotive engineer, then you will find for plaintiff and allow him such damages as you may think him entitled to under the proof, taking into consideration the age and strength of the plaintiff, and his ability to earn a living at the time he received the injury, as compared to his present condition, and the amount of injuries actually received, first giving the defendant credit for such amounts as have been paid to the plaintiff since the accident, in the way of wages, doctor's bills, nurse hire, etc.

The following charges were given at the instance of the defendant:

1. Ordinarily an employee cannot recover damages of his employer for injury received in his employment, through the negligence or carelessness of another employee. And the fact that the person injured may not be engaged in the same labor or line of employment with him whose negligence caused the injury does not change the rule of law, provided they in any manner co-operate in the same general business and are subject to the same general direction and control. The real test of co-service is subjection to the same general control, and co-operation to secure a common result, if there is a natural or necessary connection between the different classes of service, such as necessarily brings the servants into contact with each other in the prosecution of their work, however dissimilar their occupation may be. Therefore, I charge you that if you believe from the evidence that the plaintiff was an employee of the defendant, and engaged to perform services connected with or in aid of the construction and extension of the defendant's railway north of Brenham, and that in the performance of his duties he was accustomed to ride without charge and at his own will upon the construction train of defendant along said line, and that he was so in the employ of the defendant at the time he was injured, you will find a verdict for the defendant, notwithstanding you may believe that the plaintiff's injuries were caused by the negligence of the locomotive engineer.

*Breedlove & Ewing*, for appellant, cited: H. & T. C. R. R. *v.* McNamara, 1 Tex. Law Rev., 245; T. & P. R. R. *v.* Kirk, 2 Tex. Law Rev., 214; Ph., etc., R. R. *v.* Derby, 14 How., 484; Kielley *v.* Belcher Mining Co., 3 Sawy., 437; Shear. & Redf. on Negligence, §§ 108–110; Wood on Master and Servant, § 435, pp. 835–851, and authorities cited; Wharton on Negligence, § 230; Baird *v.* Pettit,

70 Pa. St., 477; Gillenwater v. Madison, etc., R. R., 5 Ind., 339; O'Donnell v. Allegheny, etc., R. R., 59 Pa. St., 239; Ch. & N. W. R. R. v. Morander, 93 Ill., 302; C., B. & Q. R. R. v. Gregory, 58 Ill., 272; T. W. & W. R. R. v. O'Connor, 77 Ill., 391; Booth v. B. & A. R. R., 73 N. Y. 38; Braun v. Chicago, etc., R. R., 53 Iowa, 595; C., R. & I. R. R. v. Henry, 7 Bradw., 322; Ill. Cen. R. R. v. Welch, 52 Ill., 183; Ford v. Fitchburg R. R., 110 Mass., 240; Lalor v. C., B. & Q. R. R., 52 Ill., 401; Ryan v. Chicago, etc., R. R., 60 Ill., 171.

*Ballinger, Mott & Terry*, for appellees, cited: Robinson v. R'y Co., 46 Tex., 540; R'y Co. v. Lempe, 1 Tex. Law Rev., 107 (59 Tex., 19); Watson v. R'y Co., 58 Tex., 434; R'y Co. v. Toppins, 11 Amer. & Eng. R. R. Cases, 222; Murphy v. R'y Co., 8 Amer. & Eng. R. R. Cases, 510; Harvey v. R'y Co., 8 Amer. & Eng. R. R. Cases, 515; Gormery v. R'y Co., 5 Amer. & Eng. R. R. Cases, 581; Henry v. R'y Co., 2 Amer. & Eng. R. R. Cases, 60; Thompson on Negligence, 1026, 1031; Story on Agency, 563, and note; Wood on Master and Servant, 835, 852; Wharton on Negligence, secs. 229, 231 *et seq.;* S. & R. on Negligence, secs. 108, 109; Carter v. Jewett, 5 Amer. & Eng. R. R. Cases, 520; Holden v. R'y Co., 2 Amer. & Eng. R. R. Cases, 94; Farwell v. R'y Co., 4 Met., 49; Hayes v. R'y Co., 3 Cush., 270; McDermott v. R'y Co., 30 Mo., 115; Wholan v. R'y Co., 8 Ohio, 249.

WEST, ASSOCIATE JUSTICE.— Without setting forth at length the testimony, or even such portions of it as we regard as the most significant, we may content ourselves with saying that, under the facts detailed in evidence before them, the jury were justified in holding that the appellant was a co-employee with the engineer of the wrecked train at the time the injury was received.

The road was then in course of construction at the point where the injury occurred. They both had as a common superior Mr. B. M. Temple, chief engineer, who had charge of the construction of this part of the road. The evidence clearly shows that the appellant, under his contract of service, felt himself bound, or at least consented, to perform such acts as the chief of construction or the chief's immediate subordinates desired him to do. All such acts, however, grew in a measure out of his employment, and were more or less connected with the business of the construction of the road. He had been sent once to hunt mules that belonged to the company, and, we may presume, were used in the work of construction. His.

chief once sent him to guard a lady passenger, put off at night at the end of the unfinished track. Other like acts are stated.

The appellant was in fact a servant of the company for hire, engaged in an employment connected with the construction of the road. His immediate business was to preserve, look after, and protect from theft or destruction, the ties of appellee, then being used in the construction and equipment of its road and road-bed; while the immediate business for the company, in which he was more directly employed when injured, was not connected with the preservation of the cross-ties. It was, however, closely connected with and concerned the construction of the road, and his connection with the business then on hand grew out of his contract of employment with the road. He was, at the time of the injury, engaged by the direction of his employer in carrying to the county seat of Burleson county, for record, a deed just executed to the railroad company for the land covered by the railroad station called "Lyons," by which point, and over which land, the appellee was then engaged in the partially completed work of the construction of their road.

In other words, we believe the court did not err in its main charge, taken as a whole, in the third, fourth, fifth and sixth paragraphs of it that are complained of, as to the relation in which the appellant, at the time of the injury, stood, under the evidence, to the servants of the appellee who were then engaged in running the construction train in question.

Nor do we think, under the facts and circumstances of this case, there was any error in giving to the jury the first instruction asked by appellee. It was in the main a correct statement of the law on the subject, and was applicable to the case made by the evidence.

The general rule in relation to the liability of the master for injuries by a servant to a fellow-servant may be stated thus: A master is not liable to his servant for damage resulting from the negligence of his fellow-servant in the course of their common employment, unless the servant causing the injury was incompetent to discharge his duty, or the servant injured was not at the time acting in his master's employment.

A master is, however, bound to take precautions to insure his servant's safety; and if, through the absence of such reasonable precautions, or through the breach of some duty incumbent on the master, or through the personal negligence of the master, the servant is injured, the master is responsible.

The rule as laid down by our court, on the subject of co-employees

and fellow-servants, will be found in Robinson v. The H. & Tex. Cent. R. R. Co., 46 Tex., 550, cited by appellee in its brief. There, Judge Moore, speaking as the organ of the court, says: "It is urged that the general rule which holds that a servant cannot recover damages from the master for an injury sustained by reason of the negligence of a fellow-servant is not applicable in this case, because the injury to appellant resulted from the negligence of the conductor for the time being, to whose direction and control appellant was subjected. For a time, as says Judge Cooley (Southern Law Review, April, 1876, p. 110), a strong disposition was manifested in some of the courts to hold to this view. We, however, agree with him that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of another; and it seems impossible, therefore, to hold that the servant contracts to run the risks of negligent acts or omissions on the part of one class of servants and not those of another class.

"This, it is believed, is now recognized as the sounder and best approved rule both on reason and authority. Priestly v. Fowler, 3 Mees. & W., 1; Coon v. S. & U. R. R., 5 N. Y., 492; Warner v. Erie R. R. Co., 39 N. Y., 468; Columbus, etc., R. Co. v. Arnold, 31 Ind., 174; Chicago, etc., R. Co. v. Murphy, 53 Ill., 336; 6 Cush., 75; 32 Vt., 473; 20 Md., 212; 23 Penn., 384."

Since the article of Judge Cooley, above referred to, was published, that learned jurist and author has devoted much time to the study of this question, and treats it quite fully in his work on Torts, published as late as the year 1880. In this work, pp. 542–545, speaking of injuries resulting from the negligence of fellow-servants, he announces his views in the following language: "The rule which exempts the master from responsibility for injuries to his servants, proceeding from risks incidental to his employment, extends to cases where the injury results from the negligence of other servants in the same employment. Whatever controversy there may have been for a time, on this point, may now be said, by an overwhelming weight of authority, to have been thoroughly quieted and settled. Some disputes still remain which concern the proper limits of the doctrine, and what, and how many, are the exceptional cases. In some quarters a strong disposition has been manifested to hold the rule not applicable to the case of a servant who, at the time of the injury, was under the general direction and control of another who was intrusted with the duties of a higher grade, and from whose negligence the injury resulted. But it cannot be disputed that the negligence of a servant of one grade is as

much one of the risks of the business as the negligence of a servant of any other; and it seems impossible, therefore, to hold that the servant contracts to run the risks of negligent acts and omissions on the part of one class of servants, and not those of another class. Nor on grounds of public policy could this distinction be admitted, whether we consider the consequences to the parties to the relation exclusively, or those which affect the public, who in their dealings with the employer may be subjected to risks. Sound policy seems to require that the law should make it for the interest of the servant that he should take care not only that he be not negligent himself, but also that any negligence of others in the same employment be properly guarded against by him, so far as he may find it reasonably practicable, and be reported to his employer, if needful. And in this regard it can make little difference what is the grade of the servant who is found to be negligent, except as superior authority may render the negligence more dangerous, and consequently increase at least the moral responsibility of any other servant, who, being aware of the negligence, should fail to report it.

"It has also sometimes been insisted that the law should exclude from the scope of the general rule the case of a servant injured by the negligence of another, who, though employed in the same general business, had his service in some distinct branch of it; as in the case of a laborer on the track of a railroad, injured by the carelessness of an engine-driver; a carpenter employed on buildings, injured by the negligence of a yard-master in making up trains, and the like. But in the main the authorities agree that the general rule must apply to such cases, and that, on the reasons on which the rule is rested, they cannot be distinguished from those in which the service of both persons was in the same line." Cooley on Torts, pp. 543–545.

The views expressed in the case of Robinson v. The H. & Tex. Cent. R. R. Co., above quoted, are substantially the same as those deduced by Judge Cooley from a careful review of a great many authorities.

The cases of The H. & Tex. Cent. R. R. Co. v. McNamara, 59 Tex., 255, and of The G., H. & S. A. R. R. Co. v. Lempe, 1 Tex. Law Rev., p. 118 (59 Tex., 19), as also the case of The T. & P. R. R. Co. v. Kirk, 2 Tex. Law Rev., 214 (see, also, same case, vol. 2, Tex. Law Rep., p. 387), cited by appellant, and also the recent case of The Gulf, West. Tex. & Pac. R. R. Co. v. Montier (Galveston term, 1884), have all been examined in connection with the present case. None of them are in the least in conflict with the views here expressed;

on the contrary, some of them tend to their support.  See, also, The Tex. Mex. R. R. Co. v. Whitmore, 58 Tex., 277; Pierce on Railroads, p. 366; Columbus R. R. Co. v. Arnold, 31 Ind., 174; Manville v. Cleveland R. R. Co., 11 Ohio St., 417; Farwell v. Bos. & Worcester R. R. Co., 4 Metc. (Mass.), 49; Hutchinson v. Railway Co., 5 Exch., 343; Morgan v. Vale of Neath R. R. Co., Law Rep., 1 Q. B., 149; Whoolan v. M. R. & Lake E. R. Co., 8 Ohio St., 249; Ind. R. R. Co. v. Love, 10 Ind., 554; Same Co. v. Klein, 11 Ind., 38.

The judgment is affirmed.

Affirmed.

[Opinion delivered February 27, 1884.]